**William James NIMS, Jr.,**
**Petitioner-Appellant,**

v.

**STATE of Iowa, Respondent-Appellee.**

No. 86–184.

Court of Appeals of Iowa.

Dec. 23, 1986.

Stephen J. Rapp, Waterloo, for petitioner-appellant.

Thomas J. Miller, Atty. Gen., Joseph P. Weeg, Asst. Atty. Gen., and Scott Lemke, Asst. Black Hawk Co. Atty., for respondent-appellee.

Considered by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

Petitioner William James Nims, Jr., appeals from the district court's denial of his

application for postconviction relief from his 1983 conviction for kidnapping in the first degree. Nims alleges he received ineffective assistance of counsel during his 1983 criminal trial in the following respects: (1) trial counsel failed to seek exclusion of inadmissible evidence, (2) trial counsel failed to submit evidence favorable to Nims, (3) trial counsel failed to request appropriate instructions or to adequately use given instructions in his final argument and (4) trial counsel failed to raise the issue of jury apportionment. The district court considered these claims and denied the application. We affirm the judgment of the district court.

In 1983 Nims was convicted of kidnapping in the first degree in violation of Iowa Code § 710.2 (1983) for abducting an eight-year-old girl, driving her to a secluded area in a park and attempting to sexually abuse her. Nims was sentenced to life in prison. His conviction and sentence were affirmed by the Iowa Supreme Court on direct appeal. *State v. Nims*, 357 N.W.2d 608, 611 (Iowa 1984).

## I.

■ Because we are confronted with an alleged constitutional violation, we resolve the issue by making our own independent evaluation of the totality of the circumstances. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980); *State v. Conger*, 375 N.W.2d 278, 279 (Iowa App.1985). This is equivalent to a de novo review. *Hinkle*, 290 N.W.2d at 30. The burden of proof is on Nims to show the allegations of ineffective assistance complained of put him to actual and substantial disadvantage of constitutional magnitude. *Polly v. State*, 355 N.W.2d 849, 854 (Iowa 1984).

## II.

■ In a collateral attack upon a state court conviction an applicant for post-conviction relief must show not only "cause" for failure to challenge the alleged error in the trial court or on direct appeal, but also must show *actual* and *substantial* prejudice resulting from alleged errors of which

he now complains. *Polly*, 355 N.W.2d at 855 (citing *United States v. Frady*, 456 U.S. 152, 171, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816, 832 (1982)).

Nims argues in his petition for postconviction relief his trial counsel was ineffective in numerous respects. Ineffective assistance of counsel may provide a basis to satisfy the two-prong test set forth in *Polly*. *Waterbury v. State*, 387 N.W.2d 309, 312 (Iowa 1986).

In considering a claim of ineffective assistance the court must indulge a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674, 693–95 (1984). The person claiming his trial attorney was ineffective must show the court that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense so as to deprive defendant of a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2065, 80 L.Ed.2d at 693. Defendant has the burden to prove both elements by a preponderance of the evidence. *Sallis v. Rhoads*, 325 N.W.2d 121, 122 (Iowa 1982).

■ Defendant is not entitled to perfect representation, only that which is within the normal range of competency. *State v. Halstead*, 362 N.W.2d 504, 508 (Iowa 1985). In deciding whether trial counsel's performance was deficient, we require more than a showing that trial strategy backfired or that another attorney would have prepared and tried the case somewhat differently. *Fryer v. State*, 325 N.W.2d 400, 413–15 (Iowa 1982). Where counsel makes reasonable decisions concerning strategy, regardless of the success or failure of such strategy, the reviewing court will not interfere simply because the strategy did not achieve the desired result. *State v. Newman*, 326 N.W.2d 788, 795 (Iowa 1982).

Rarely do we find failure to preserve error to be sufficiently egregious to deny defendant his right to effective assistance of counsel. *Halstead*, 362 N.W.2d at 508.

In determining whether defendant was prejudiced by his counsel's performance, we require the person making the claim to show counsel's failure to perform an essential duty worked to the client's *actual* and *substantial* disadvantage. *State v. Miles*, 344 N.W.2d 231, 234 (Iowa 1984). In *Strickland* the supreme court articulated a similar test for establishing prejudice:

> The defendant must show that there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland*, 466 U.S. at 694, 104 S.Ct. at 1068, 80 L.Ed.2d at 698. (emphasis added).

### III.

Nims first contends trial counsel rendered ineffective assistance by failing to object to allegedly inadmissible evidence.

**A. Testimony of Dr. Georgio Kazenelson.** Nims contends counsel rendered ineffective assistance in failing to object when Dr. Kazenelson's testimony exceeded the minutes of testimony.

We need not determine whether counsel's performance was deficient before examining the prejudice component on an ineffective assistance claim. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice ... that course should be followed"); *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984).

We reject Nims' argument Dr. Kazenelson's testimony in question prejudiced Nims. Dr. Kazenelson's testimony was not the only evidence regarding penetration. Evidence of penetration was already in the record. Nims admitted in his statements to police after his arrest that he attempted to have sexual intercourse with the victim. In his postconviction relief trial Nims admitted the same again. *See Taylor*, 352 N.W.2d 683 at 685–86 (Failure of trial counsel to object or cast doubt on medical examiner's testimony did not prejudice defend-

ant where there existed sufficient other evidence to support defendant's conviction).

Moreover, sufficiency of the evidence of penetration was not the issue at trial. Rather, Nims relied on a diminished capacity defense. Thus, admission of testimony regarding penetration was irrelevant to Nims' defense. We therefore determine Nims did not suffer actual and substantial prejudice due to Dr. Kazenelson's testimony regarding the cause of the victim's injuries and determine trial counsel did not render ineffective assistance.

**B. Testimony of Dr. Taylor.** Nims argues trial counsel was ineffective in failing to object to Dr. Michael Taylor's testimony concerning Nims' mental condition at the time he committed the offenses in question. Nims contends Dr. Taylor based his opinion on minutes of testimony. He argues trial counsel did not seek an in camera examination of Dr. Taylor to determine whether he based his opinion on portions of the minutes which he contends were inadmissible. We find no merit to Nims' argument. Nims has failed to produce any evidence that any portion of the minutes of testimony were inadmissible or contrary to a witness' testimony at trial. As such, Nims has not shown he was in any way prejudiced by Dr. Taylor's testimony or trial counsel's failure to object to such testimony. *See State v. Luter*, 346 N.W.2d 802, 813–14 (Iowa 1984). We therefore determine trial counsel did not render ineffective assistance in not objecting to Dr. Taylor's opinion testimony.

### IV.

Nims next argues trial counsel rendered ineffective assistance by failing to submit evidence favorable to Nims.

**A. Failure to Call Black Hawk County Deputy Sheriff as a Witness.** Nims contends trial counsel failed to call a Black Hawk County deputy sheriff, who was second-in-command at the jail during the time frame in question, to testify regarding how Nims' mental state and con-

duct changed after he was jailed and given a different diet.

Complaints about failure to call witnesses should be accompanied by a showing their testimony would have been beneficial. *Nichol v. State,* 309 N.W.2d 468, 470 (Iowa 1981). The reviewing court will not second-guess counsel's decision as a matter of trial strategy to forego potentially beneficial testimony of a witness rather than risk introduction of potentially damaging testimony on cross-examination or rebuttal. *Cooley v. Nix,* 738 F.2d 345, 347 (8th Cir.) *cert. denied,* 469 U.S. 1089, 105 S.Ct. 597, 83 L.Ed.2d 706 (1984) (citing *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 693–95). *See Schrier v. State,* 347 N.W.2d 657 (Iowa 1984).

Trial counsel testified at the postconviction hearing he did not call the deputy sheriff as a witness because he thought that strategy might have an adverse impact. Trial counsel testified the deputy sheriff had told trial counsel he would also have testified that Nims had become more aggressive during the time he was jailed. Trial counsel's strategy was to avoid showing the court any evidence indicating Nims had an aggressive personality.

At his postconviction hearing, however, Nims did not call the deputy sheriff to testify about whether he would have given beneficial testimony. In addition, Nims did not produce any evidence, other than Nims' own testimony, that the deputy sheriff's testimony would have been favorable. Under these circumstances, we cannot say the decision not to call the deputy sheriff was anything other than sound trial strategy as trial counsel claims. *See Nichol,* 309 N.W.2d at 471.

**B. Failure to Call Petitioner as a Witness.** Nims claims his trial counsel was ineffective for failure to call him as a witness for surrebuttal and therefore in denying him his right to testify. We find Nims has failed to establish his claim.

We will assume only the defendant can choose whether to testify in a criminal case and that choice cannot be ignored by trial counsel. *Schrier,* 347 N.W.2d at 664 (cit-

ing *Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510, 53 L.Ed.2d 594, 607 (1977) (Burger, C.J., concurring)). Trial counsel, of course, must take a stand on the issue based on the perception as to what course best promotes the client's chances for obtaining a successful result. *Id.*

We find on our de novo review of the record that trial counsel advised Nims against taking the stand for surrebuttal, explained that decision and Nims acceded to counsel's recommendation. We credit testimony of trial counsel at the postconviction hearing that Nims' decision in this regard amounted to more than silent acquiescence. In addition, we find believable trial counsel's testimony Nims never told counsel he wanted to reconsider his decision not to do surrebuttal.

On circumstances presented after a verdict has been returned and a conviction has resulted, a new trial cannot be granted because of hindsight determination that petitioner's testimony might have been helpful. *Schrier,* 347 N.W.2d at 664. Such relief may be granted only upon a showing counsel's advice fell below the constitutional standard. *Id.*

In the instant case, the record establishes there was nothing in the state's rebuttal which Nims could himself rebut. Counsel chose not to jeopardize Nims' case by potential unexpected consequences which might have resulted from calling Nims for surrebuttal. Because counsel's determination is supportable as a trial strategy, it affords Nims no basis for relief. *See Hinkle v. State,* 290 N.W.2d 28, 30–31 (Iowa 1980).

**V.**

Nims argues trial counsel was ineffective for failure to request appropriate jury instructions and failure to use given jury instructions in closing argument.

**A. Failure to Object to Instructions.** Nims claims trial counsel was ineffective in failing to object to marshalling instructions on first-degree kidnapping and

second-degree sexual abuse. Nims contends the kidnapping instruction should have specifically stated the sexual abuse element of kidnapping requires "specific" intent. He also contends "specific" intent language should have been included in the instruction on second-degree sexual abuse since that instruction was the only one defining "sexual abuse" for purposes of the first-degree kidnapping charge. We disagree.

Iowa Code § 710.1(3) (1985) provides a person commits the crime of kidnapping when, knowing he has neither the authority nor the consent of a person, confines or removes that person from one place to another for certain purposes, including sexual abuse. *See* Uniform Jury Instruction 1002. Kidnapping in the first degree occurs when, as a consequence of the kidnapping, the victim is intentionally subjected to sexual abuse. Iowa Code § 710.2 (1985). Kidnapping in the first degree is a Class A felony. Iowa Code § 710.2 (1985).

Iowa courts have held that first-degree kidnapping is a specific intent crime. *State v. Doughty*, 359 N.W.2d 439, 441 (Iowa 1984). In *Doughty*, even though the court determined first-degree kidnapping to be a specific intent crime, the court also held the trial court did not err in refusing defendant's claim the instruction must contain language expressly stating the specific intent requirement:

> We find no merit in the argument that the court erred in failing to state in its instructions that the "intent to subject the [victim to] sexual abuse," for kidnapping under section 710.1(3) must be a "specific" rather than a general intent. The jury was correctly instructed that it must find an intent to commit sexual abuse. Such intent is specific, regardless of how it was characterized by the court; and it is not necessary that the statutory language be supplemented by insertion of the word "specific." While the court could have avoided this argument by simply acceding to the defendant's request, it was not error to refuse to do so.

The instant case is identical to *Doughty*. In Nims' criminal trial, the court instructed the jury as follows:

### INSTRUCTION NO. 22

We must find the defendant not guilty of kidnapping in the first degree unless the state has proved by evidence beyond a reasonable doubt each of the following elements:

1. That on or about the 10th day of September, 1982, the defendant removed [A.S.] from one place to another with the intent to subject her to sexual abuse.

2. That the defendant did so knowing he did [not] have the consent of [A.S.] to do so.

3. That as a result of the removal [A.S.] was intentionally subjected to sexual abuse.

If you find the state has proved beyond a reasonable doubt each and all of the elements, then you will find the defendant guilty of kidnapping in the first degree; but, if you find the state has failed to prove beyond a reasonable doubt one or more of the elements, then you shall proceed to determine whether the defendant is guilty of sexual abuse in the second degree.

### INSTRUCTION NO. 23

You must find the defendant not guilty of sexual abuse in the second degree, unless the state proves by evidence beyond a reasonable doubt, each of the following elements:

1. That on or about the 10th day of September, 1982, the defendant performed a sexual act, as that term is explained in Instruction No. 27 with [A.S.].

2. That [A.S.] was under the age of twelve.

If you find the state has proved beyond a reasonable doubt each and all of the elements, then you will find the defendant guilty of sexual abuse in the second degree, but, if you find the state has failed to prove beyond a reasonable

doubt one or more of the elements, then you shall proceed to determine whether the defendant is guilty of kidnapping in the third degree without sexual abuse.

We determine Instruction 22 adequately met the standard enunciated in *Doughty*. *Doughty*, 359 N.W.2d at 441. Since Instruction 22 set forth the intent requirement, it was unnecessary for any instructional definition on sexual abuse itself to include the intent language of the kidnapping instruction. However, at the same time, we determine Instruction 23 was not a definitional instruction on sexual abuse. Rather, we find Instruction 23 was solely a marshalling instruction on the lesser-included offense of second-degree sexual abuse, a Class B felony. *See* Iowa Code § 709.3 (1985). *See State v. Davis*, 328 N.W.2d 301 (Iowa 1982); *State v. Newman*, 326 N.W.2d 796 (Iowa 1982). Second-degree sexual abuse itself is not a specific intent crime, but is a general intent crime. *Lamphere v. State*, 348 N.W.2d 212, 217 (Iowa 1984). We find there was absolutely no confusion regarding the intent element for sexual abuse in Instruction 22 and Instruction 23, therefore, there were no grounds on which trial counsel could have successfully objected.

**B. Failure to Utilize Confinement Requirement of Kidnapping in Closing Argument.** Nims argues trial counsel was ineffective in closing argument for failing to call the jury's attention to the fact that confinement, for purposes of kidnapping, must meet the standard of "separate significance." *State v. Hardin*, 359 N.W.2d 185, 189–90 (Iowa 1984). Nims claims the evidence did not show he had confined his victim such that the confinement had significance apart from that inherent in sexual abuse. Nims contends trial counsel was ineffective in failing to stress that requirement in relation to his claim he was with the victim only 20 minutes and was on his way to delivering the victim to her school at the time he was arrested.

We reject Nims' argument on several grounds. First, at the postconviction hearing trial counsel testified he fo-

cused the closing argument on diminished capacity, rather than sufficiency of evidence of confinement, because he believed it to be Nims' only legitimate defense and trial strategy. We determine trial counsel's argument to be believable and agree that the kidnapping evidence against Nims far exceeded slight or incidental acts of confinement and asportation. The record clearly shows Nims grabbed the victim off the street as she was walking to school, put her in his truck and held her down on the floor as he drove off. Nims stopped at a park area on the same road, carried his victim to a wooded area some 340 feet away and proceeded to sexually abuse her. *See Newman*, 326 N.W.2d at 790–91 (Evidence of confinement sufficient where defendant offered victim a ride home, but instead drove to a secluded city park, dragged her to a wooded area and sexually abused her); *State v. Folck*, 325 N.W.2d 368 (Iowa 1982) (Evidence of confinement sufficient where defendant drove victim down a secluded gravel road in the country and sexually abused her); *State v. Knupp*, 310 N.W.2d 179 (Iowa 1981) (Evidence of confinement sufficient where defendant pulled victim into his auto, drove to an oil company parking lot and sexually abused her). As such, under the circumstances, we find trial counsel's strategy in closing argument was reasonable and competent.

### VI.

Finally, Nims argues he was denied effective assistance because of trial counsel's failure to raise the issue of jury apportionment. He contends counsel failed to challenge his criminal jury panel as having been apportioned in violation of Iowa Code § 609.4 (1985). Iowa Code § 609.4 provides:

On or before the date of said meeting of the appointive commission, the county auditor shall apportion the number of grand and petit jurors to be selected among the several election precincts, and the talesmen of which there shall be at least two, among the precincts from which the same are to be drawn, in each

case as nearly as practicable *in proportion to the number of persons residing in the respective election precincts,* and *certify said apportionment to such commission.* (emphasis added).

A criminal defendant has a constitutional right under the sixth amendment to a jury drawn from a representative cross section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 527, 95 S.Ct. 692, 696, 42 L.Ed.2d 690, 696 (1975); *Cooper v. State,* 379 N.W.2d 917, 917–18 (Iowa 1986).

In *Cooper,* the Iowa Supreme Court determined a defendant's sixth amendment rights are violated if there is a *systematic exclusion* of an identifiable segment of society which prevents the jury from being representative of the community. *Cooper,* 379 N.W.2d at 918. The court held in a claim of ineffective counsel based on failure to challenge the jury panel, the petitioner must show *actual* prejudice amounting to an unconstitutional deprivation. *Id.* at 919.

Although Nims admits the instant case falls squarely within *Cooper,* nevertheless he raises the issue of jury apportionment under the theory that *Batson v. Kentucky,* 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), overrules or modifies *Cooper.*

In *Batson,* the Supreme Court held the same equal protection principles as are applied to determine whether there is purposeful discrimination in selecting the venire also govern the state's use of peremptory challenges to strike individual jurors from the petit jury. *Batson,* 476 U.S. at ——, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. There, at the trial of a black man charged with second-degree burglary and receipt of stolen goods, the prosecutor had used his peremptory challenges to strike all four black persons on the jury. The Supreme Court also rejected the portion of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), concerning evidentiary burdens placed on a defendant's claiming denial of equal protection through the state's discriminatory use of peremptory challenges. *Batson,* 476 U.S. at ——, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. Instead,

the Supreme Court held a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by showing the following:

1. Defendant is a member of a cognizable racial group;
2. The prosecutor has exercised peremptory challenges to remove from the venire members of defendant's race;
3. Facts and other relevant circumstances in defendant's own case raise an inference the prosecutor purposely used peremptory challenges to exclude persons from the petit jury on account of their race.

*Batson,* 476 U.S. at ——, 106 S.Ct. at 1723–1724, 90 L.Ed.2d at 87–88.

As applied to discriminatory selection of the venire, the *Batson* court found a defendant could make a prima facie of *purposeful* discrimination showing on proof that members of defendant's race were *substantially* underrepresented on the venire from which *his* jury was drawn. *Batson,* 476 U.S. at ——, 106 S.Ct. at 1722, 90 L.Ed.2d at 86. In addition, the court reaffirmed that as in any equal protection case, the burden is on defendant who alleges discriminatory selection to produce facts and evidence the state's actions rose to the level of purposeful or intentional discrimination. *Batson,* 476 U.S. at ——, 106 S.Ct. at 1720, 90 L.Ed.2d at 85.

 In the instant case, Nims has not produced evidence sufficient to meet even the prima facie evidentiary standard enunciated in *Batson.* Nims has not produced any evidence showing *his* jury *panel* was improperly apportioned regarding representation of persons from economically disadvantaged backgrounds. Nims points to two of over 80 precincts in Black Hawk County where the percentage population on the jury lists did not identically match the precinct's population as a percentage of the total county population. Nims argues the precinct overrepresented on the jury list had a heavy concentration of prosperous residents while the precinct underrepre-

sented had a heavy concentration of economically disadvantaged persons. However, Nims has not shown the slight underrepresentation on the jury list in any way tainted his jury panel. We find the variations Nims cites to be only minimal and do not in themselves amount to *substantial* underrepresentation of economically disadvantaged persons from which we could infer purposeful discrimination. Therefore, we determine Nims has not shown he was actually prejudiced by trial counsel's failure to challenge the jury apportionment and hold trial counsel did not render ineffective assistance.

We have considered all claims and arguments advanced by the postconviction applicant but can find no basis upon which to disturb Nims' conviction and sentence. The judgment of the district court denying postconviction relief is affirmed.

AFFIRMED.