# IN THE COURT OF APPEALS OF IOWA

No. 16-1047
Filed May 17, 2017

**SCOTT ALLAN MASON,**
         Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
         Respondent-Appellee.
_____

         Appeal from the Iowa District Court for Decatur County, Paul R. Huscher,

Judge.



         Scott Mason appeals the denial of his application for postconviction relief.

**AFFIRMED.**



         Bryan J. Tingle of Tingle Law Office, Des Moines, for appellant.

         Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee State.



         Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

Scott Mason appeals the denial of his application for postconviction relief. Upon our review, we affirm.

### I. *Background Facts and Proceedings.*

In 2008, Scott Mason was charged by trial information with two criminal counts: (I) assault while using or displaying a dangerous weapon, and (II) stalking, second offense. *See State v. Mason*, No. 10-1321, 2011 WL 2419787, at *2 (Iowa Ct. App. June 15, 2011). Following a jury trial, the jury found Mason was not guilty on count I but guilty as charged on count II. *See id.* at *4. After denying Mason's posttrial motions, the district court sentenced Mason to a term of incarceration not to exceed five years. *See id.* Mason appealed the conviction, and this court affirmed. *See id.* at *11-12. In finding his trial counsel was not ineffective in failing to challenge the sufficiency of evidence regarding the stalking charge, we set forth the following findings:

> In this case, Mason's course of conduct occurred for more than ten years, beginning in 1996 when Mason alarmed [the victim] Hamaker to the point that Hamaker called his wife to warn her to lock the doors. In 1999, Mason called Hamaker and threatened to shoot and kill him. In 2000, Mason shined a bright spotlight on Hamaker in the middle of the night in a field, cornered Hamaker when he was going home, and yelled and cursed at him. In 2003, Mason blocked Hamaker in his driveway and threatened him with a gun. Hamaker requested a no-contact order after this incident, which was issued by the court. In January 2008, Mason stopped in the middle of the road in front of Hamaker's tractor and approached Hamaker, swinging a pipe in a threatening manner.
>
> Over the years, Mason also drove back and forth on the road in front of Hamaker's house for no apparent reason, making obscene gestures toward Hamaker and gunning his engine. Hamaker testified at length in regard to his fear of Mason. He explained that he took Mason's death threat seriously and feared Mason would kill him. He testified he was constantly afraid and

worried about what Mason would do next, and that his fear of Mason caused him to change his daily life.

Upon our review, we find substantial evidence in the record to establish Mason's guilt. A reasonable jury could have found Mason's course of conduct would cause a reasonable person to fear death or injury to Hamaker; Mason knew or should have known his course of conduct would place Hamaker in fear of death or injury; and Hamaker was placed in fear of death or injury.

*Id.* at *11.

In 2014, Mason filed an application for postconviction relief (PCR). The application was amended in 2015, and a PCR hearing was held in 2016. Following the hearing, the PCR court entered its order denying Mason's PCR application, finding Mason failed to establish his trial counsel rendered ineffective assistance. Mason now appeals the PCR court's ruling, arguing his trial counsel was ineffective because he did not present any defense witnesses at trial, including calling Mason to testify.[1]

## II. *Ineffective Assistance of Counsel.*

Our review of ineffective-assistance-of-counsel claims is de novo. *See More v. State*, 880 N.W.2d 487, 498 (Iowa 2016); *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016). To succeed on a claim of ineffective assistance of counsel, a PCR applicant "must prove by a preponderance of evidence '(1) his

---

[1] Mason's brief claims he preserved error by filing a notice of appeal. As the State notes—and we cannot stress this enough—filing a notice of appeal "has nothing to do with error preservation." *State v. Lange*, 831 N.W.2d 844, 846-47 (Iowa Ct. App. 2013); *see also* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (Fall 2006). Rather, our appellate rules specifically require the appellant's brief to include in the argument section a "statement addressing how the issue was preserved for appellate review, with references to the places in the record *where the issue was raised and decided.*" Iowa R. App. P. 6.903(2)(g)(1) (emphasis added); *see also Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). Nevertheless, the State concedes error was actually preserved on both points, citing to the record where Mason raised and the district court decided the issues raised on appeal.

trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.'" *Rhoades v. State*, 848 N.W.2d 22, 28 (Iowa 2014) (citation omitted). If Mason cannot establish both elements, his claim fails; thus, if we find one element lacking, we need not address the other element. *See State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016). "[I]t is the applicant's burden to present facts establishing inadequate representation." *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011).

### A. *Failure to Call Witnesses*.

At the PCR hearing, Mason testified that he believed his trial counsel was going to call witnesses in his defense to rebut the victim's testimony concerning past incidents between Mason and the victim. Mason testified he told his trial counsel the names of numerous witnesses that could testify on his behalf concerning his past incidents with the victim, wherein the witnesses would testify Mason was actually the victim, and Mason thought his trial counsel "had intentions of calling everybody [Mason] mentioned to him." Ultimately, the PCR court concluded Mason failed to show that his trial counsel's decision not to call witnesses was a breach of his duty or prejudiced Mason. Upon our de novo review of the record, we agree.

First, Mason's trial counsel testified and was clear on his trial strategy. He testified no defense was presented in Mason's case because the State's case was very weak, pointing out that Mason was actually acquitted of one of the State's charges. Counsel explained his trial strategy was to point out the discrepancies in the testimony of the law enforcement official and the victim to undermine their credibility and establish reasonable doubt. Counsel testified he

tried to contact people Mason said might be able to provide information related to the predicate offenses of his stalking charge, but he did not "recall being able to locate anyone that had information that [he] felt would be helpful" to the trial strategy. Mason's trial counsel did not recall ever telling Mason that he intended to call any witnesses in his defense. He stated he thought he would recall if he had done that. He also noted that he would have had to notify the State about the witnesses and did not recall doing so.

Second, Mason failed to provide any evidence beyond his own, self-serving statements that family members and other random persons he identified would have testified and refuted the victim's testimony such that the outcome of the trial would have been different. Mason's own testimony at the PCR hearing was unclear as to what he told his trial counsel prior to the trial. Moreover, he presented no testimony or affidavits from his claimed witnesses explaining with specificity what the witnesses' testimony would have been and how it would have changed Mason's case. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (claiming that defense counsel did not fully investigate a case requires an applicant to state what an investigation would have revealed or how anything discovered would have affected the result of the trial); *Nichol v. State*, 309 N.W.2d 468, 470 (Iowa 1981) (noting "complaints about failure to call witnesses should be accompanied by a showing their testimony would have been beneficial"). This is simply not enough to show a breach of duty by counsel or prejudice to the applicant for failure to call witnesses. *See id.*; *see also Nims v. State*, 401 N.W.2d 231, 235 (Iowa Ct. App. 1986). Given trial counsel's testimony as to why witnesses were not called and Mason's lack of evidence to

the contrary, Mason failed to establish his trial counsel was ineffective for failing to call witnesses.

### B. Failure to "Allow" Mason to Testify.

Similarly, Mason testified at the PCR hearing that he had wanted to testify at his trial and believed he was going to until the State rested its case. The PCR court, in its ruling, noted Mason's trial counsel did not make a record at trial regarding Mason's right or waiver of his right to testify, but the court also noted that there was no record that Mason, before or during his trial, ever requested or demanded to testify. Mason only claimed he was led to believe he was going to testify. Ultimately, the PCR court concluded this was not enough to establish his trial counsel was ineffective, and upon our de novo review, we agree.

Mason's trial counsel testified he thought having Mason testify was an unwise strategy, stating he believed "there was more to be lost by putting [Mason] on the stand." Counsel explained Mason had a history of mental health concerns and "a little bit of a difficult time sometimes controlling his temper; maybe not so much where he bursts out, but just in terms of losing his calm disposition." Counsel gave the example of a mediation related to the case, wherein Mason became frustrated and got up and left. Counsel was concerned the prosecutor might confuse or frustrate Mason to the point it could hurt Mason's case. Counsel testified he did not believe he had "to work very hard to convince [Mason] not to testify in this case," but counsel acknowledged that after trial Mason "certainly felt like he should have been able to testify."

Mason himself testified at the PCR hearing that he and his trial counsel went back and forth over whether Mason would testify, and Mason understood

his trial counsel had been concerned that calling Mason as a witness would cause the State to call the victim's wife as a witness, which was not good for his defense. When asked whether he agreed with his counsel's reasoning in regards to not having him testify, Mason answered, "It was kind of mixed." Finally, Mason's testimony as to what he would have testified to, had he testified at trial, was unclear and unpersuasive. Given trial counsel's testimony as to why Mason was advised not to testify and Mason's lack of evidence to the contrary, Mason failed to establish his trial counsel was ineffective for failing to call him as a witness.

### III. Conclusion.

Because Mason failed to establish his trial counsel was ineffective for failing to call witnesses in his defense, including calling Mason as a witness, we affirm the PCR court's ruling denying Mason's PCR application.

**AFFIRMED.**