**IN THE COURT OF APPEALS OF IOWA**

No. 17-0507
Filed February 21, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**MICHAEL A. LAJEUNESSE,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

     The defendant appeals from his convictions for attempted murder and willful injury.  **AFFIRMED.**

     Mark C. Smith, State Appellate Defender, and Brenda J. Gohr, Assistant Appellate Defender, for appellant.

     Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

     Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

Michael LaJeunesse was convicted of attempted murder, in violation of Iowa Code section 707.11 (2016), and willful injury causing serious injury, in violation of Iowa Code section 708.4(1), after he beat and strangled a woman (This opinion will refer to her as "Jane Doe.") with whom he was having a romantic relationship. In this direct appeal, LaJeunesse challenges the sufficiency of the evidence supporting his conviction for attempted murder and raises two claims of ineffective assistance of counsel. LaJeunesse also makes several *pro se* challenges to the adequacy of his trial counsel's representation.

I.

In his first claim of error, LaJeunesse challenges the sufficiency of the evidence in two respects. First, he contends his voluntary intoxication precluded him from forming the specific intent to kill or injure Doe. Second, he contends there was insufficient evidence to establish he strangled Doe.

This court reviews challenges to the sufficiency of the evidence for the correction of legal error. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). We will uphold a verdict if substantial record evidence supports it. *See State v. Webb*, 648 N.W.2d 72, 75 (Iowa 2002). "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *Id.* at 75–76. When reviewing for the sufficiency of the evidence, we view the evidence in the light most favorable to the State but consider all evidence in the record. *See id.* at 76. "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006).

This court assesses the legal sufficiency of the evidence in light of the jury instructions given where, as here, the instructions were given without objection. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). With respect to attempted murder, the district court instructed the jury the State had to prove the defendant "beat and strangled" Doe and the defendant "specifically intended to cause the death" of Doe. The instructions did not define "strangled." The instructions defined specific intent as follows:

> Specific intent means not only being aware of doing an act and doing it voluntarily, but, in addition, doing it with a specific purpose in mind.
>
> Because determining the Defendant's specific intent requires you to decide what he thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the Defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his acts.

The district court also submitted an intoxication defense to the jury:

> The Defendant claims he was under the influence of Intoxicants at the time of the alleged crime. The fact that a person is under the influence of intoxicants does not excuse nor aggravate his guilt. Even if a person is under the influence of intoxicants, he is responsible for his act if he had sufficient mental capacity to form the specific intent necessary to the crime charged or had the specific intent before he fell under the influence of intoxicants and then committed the act. Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming the specific intent.

The record reflects the following. LaJeunesse met Doe at an Alcoholics Anonymous meeting in July 2016. The two became fast friends and then commenced a romantic relationship. At some point after meeting, both relapsed. On October 12, Doe spent the night at LaJeunesse's apartment where they drank an unspecified quantity of beer. The next morning, the two went to Doe's home

and shared one-half of a bottle of chilled rum while they talked and watched videos. In the afternoon on the same day, LaJeunesse looked through the text messages on Doe's phone and concluded Doe was having a relationship with another man. LaJeunesse raised the issue with Doe. After some discussion, she decided to go to bed and take a nap.

Doe testified the next thing she remembered was "being punched awake." She testified LaJeunesse punched her, drug her off her bed, put her head through the bedroom wall, ripped her clothes off, drug her by the hair into the bathroom, and threw her into the tub. She testified LaJeunesse then turned on the water in the shower, grabbed her by the ears, and slammed her into the tub while "punching, slapping, and hitting." "[H]e ripped the shower curtain down and wrapped it around [her] neck. And then he'd let go and then he'd sit back on the toilet and take a break. He kept saying, 'I have to kill you now.'" She testified he used a trash-can liner to choke her "in between . . . periods of punching and hitting and strangling and begging to stop and him saying, 'No. You have to die.'" She testified she begged him to stop and asked if he was blacked out or knew what he was doing. He replied he was not blacked out and said he knew what he was doing. Doe testified he looked her in the eyes when he said this. She testified her breathing was impaired when he wrapped the shower curtain liner around her neck. Photographs of the injuries corroborated the nature and extent of Doe's injuries. The medical examiner testified Doe's injuries were consistent with blunt force trauma and strangulation.

The assault was interrupted when one of Doe's friends from Alcoholics Anonymous came to the house to check on Doe. The friend entered the home,

heard water running in the bathroom, and heard Doe call for help. The friend testified she opened the bathroom door, saw a naked man holding Doe down in the tub, and observed Doe was bleeding. The friend called 911 and ran out of the house. LaJeunesse got dressed, gathered his belongings, and exited the house as police arrived. A police officer testified he saw LaJeunesse start to run and yelled for him to stop. LaJeunesse fell down and started crawling. The officer apprehended LaJeunesse. LaJeunesse told the officer he could not remember his name. LaJeunesse urinated on himself in route to the police station.

LaJeunesse testified at trial. He testified he drank heavily that day and ingested two Lorazepam pills to "chill out." He testified he was hurt and angry because he and Doe talked about her cheating on him. He testified she went to bed, and he borrowed her car, took the dog, and "went riding around." He drove to work, spoke to his boss, and agreed to work a Saturday shift. He testified he bought vodka. He did not drink any of the vodka while driving around. He testified he went back to Doe's house and drank a "gulp out of it, and that's all I remember." He testified he blacked out and did not remember anything else until after the assault. He remembered Doe "in the bathtub. She was bleeding. . . she was hurt pretty bad, and she was in the bathtub, and she told me I had to leave. And I said okay." He also remembered being "tackled" by an officer.

The defendant contends the jury was compelled to find he lacked specific intent based on the evidence. We disagree. "[T]he burden of proving specific intent does not leave the State even when the defendant relies on an intoxication defense." *State v. Guerrero Cordero*, 861 N.W.2d 253, 260 n.5 (Iowa 2015),

*overruled on other grounds by Alcala v. Marriott Int'l Inc.*, 880 N.W.2d 699, 708 (Iowa 2016).

> Intoxication is a matter of degree. . . . The law does not specify the degree or the percentage of intoxication essential to sustain this defense, but it does require that it be such as to render the accused incapable of the requisite specific intent. He may be under the influence of intoxicating liquor, but he will not be absolved of criminal responsibility if he still possesses mental capacity to entertain the intent. Mere intoxication is not sufficient. Neither is it enough that he had been drinking liquor.

*State v. Polson*, No. 16-2104, 2017 WL 1401472, at *6 (Iowa Ct. App. Apr. 19, 2017). An intoxication defense requires "a high level of intoxication to support a finding of no specific intent." *Guerrero Cordero*, 861 N.W.2d at 259.

Here, there was sufficient evidence to prove both specific intent and strangulation. There was direct evidence of specific intent: Doe testified LaJeunesse told her he realized what he was doing and repeatedly told her he was going to kill her and she had to die. *See State v. Stigler*, No. 16-1495, 2017 WL 3525168, at * 3 (Iowa Ct. App. Aug. 16, 2017) ("Finally, Mr. Stigler attacked Ms. O'Connell in at least three separate incidents, with pauses in between, resulting in [fifteen] lacerations. This, combined with his repeated statements that he would kill her if she kept lying, which were admitted by Mr. Stigler and confirmed by both Ms. O'Connell and Ms. Johnson, suggest he was aware of his actions. He intended for those actions to cause the death of Ms. O'Connell."). There was also circumstantial evidence of specific intent: the nature and extent of Doe's injuries. Doe testified about the nature and extent of her injuries. She testified her breathing was impaired. The medical examiner testified Doe's injuries were consistent with strangulation. *See State v. Sisco*, No. 16-1170, 2017 WL 3505294, at *3 (Iowa Ct.

App. Aug. 16, 2017) ("We have previously held strangulation creates a substantial risk of death . . . The State's expert provided testimony indicating the strangulation, to the point D.R. was unable to breathe and wanted to 'just let go,' created a substantial risk of death and a serious injury."); *State v. Kimbrough*, No. 16-1280, 2017 WL 2876244, at *2 (Iowa Ct. App. July 6, 2017) (concluding for purposes of Iowa Code section 708.2A strangulation did not require a loss of consciousness).

In contrast, there was not strong evidence of intoxication sufficient to preclude the formation of intent. Doe testified she and LaJeunesse were drinking but LaJeunesse did not have difficulty communicating with her due to intoxication. LaJeunesse testified he drove around and went to speak with his boss about an issue. He testified he was not drinking during this time period. The jury was free to infer, based on LaJeunesse's ability to drive and his goal-directed activity immediately prior to the attack, he had the capacity to form specific intent. *See State v. Clark*, No. 14-2035, 2016 WL 1130286, *4 (Iowa Ct. App. Mar. 23, 2016) ("[T]he jury heard evidence from multiple witnesses regarding [the defendant's] ability to think and act coherently at various points in time before, during, and after those attacks."). After driving around, LaJeunesse drank only an additional "gulp" of vodka before the attack. The jury was free to conclude this additional "gulp" of alcohol would not lead to intoxication sufficient to preclude the formation of specific intent in light of LaJeunesse's activities immediately prior. After Doe's friend interrupted the attack, LaJeunesse dressed himself and attempted to flee the scene of the crime. The jury was free to infer from this LaJeunesse understood what he had done and had the capacity to act with specific intent. *See State v. Wilson*, 878 N.W.2d 203, 220 (Iowa 2016) (Waterman, J., concurring specially);

*State v. Dye*, No. 08-0887, 2009 WL 3337617, at *5 (Iowa Ct. App. Oct. 7, 2009) (finding attempts to clean up scene, flee the scene and elude police could be used to defeat a diminished capacity defense).

Ultimately, "[t]he effect of defendant's heavy drinking on formation of the requisite specific intent to kill is for the jury to determine." *See State v. Wilkens*, 346 N.W.2d 16, 20–21 (Iowa 1984); *State v. Ibarra*, No. 12-0330, 2013 WL 530558, at *12 (Iowa Ct. App. Feb. 13, 2013). We will not disturb the jury's verdict on this record.

## II.

LaJeunesse raises several claims of ineffective assistance of counsel. We review de novo claims of ineffective assistance of counsel. *See Everett v. State*, 789 N.W.2d 151, 158 (Iowa 2010). To succeed on an ineffective-assistance claim a defendant must show "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008).

LaJeunesse first claims counsel was ineffective for failing to obtain a toxicology expert to testify on his behalf. He claims a toxicology expert could have explained how the pills LaJeunesse allegedly ingested interacted with the alcohol he consumed. We note Iowa case law tends to recognize obtaining an expert is a strategic decision. *See Heaton v. State*, 420 N.W.2d 429, 432 (Iowa 1988) (discussing the failure to put on a toxicology expert and concluding there was it not ineffective assistance because "[w]e believe that the question of whether or not to call an expert witness is a matter of trial strategy"); *Bickell v. State*, No. 01-1000, 2002 WL 31425214, at *2 (Iowa Ct. App. Oct. 30, 2002) (finding no breach of duty

where counsel failed to put on an expert to support a ricochet theory because counsel made "a reasonable tactical decision").

LaJeunesse next contends trial counsel was ineffective in failing to more definitively challenge during closing argument the sufficiency of the evidence establishing strangulation. In other words, the defendant contends his trial counsel spent too much time arguing the intoxication defense rather than challenging the evidence related to strangulation. As a general rule, choosing one theory of defense as the focus for closing argument is considered trial strategy. *See Nims v. State*, 401 N.W.2d 231, 237 (Iowa Ct. App. 1986) (rejecting ineffectiveness claim where counsel focused on diminished capacity over sufficiency of the evidence). "[R]easonable strategic considerations may justify the rejection of one theory of defense in favor of another theory reasonably perceived by counsel to be in the accused's best interest." *See Anfinson v. State*, 758 N.W.2d 496, 501 (Iowa 2008).

LaJeunesse claims the cumulative effect of the alleged errors undermines confidence in the outcome of the proceeding. "[I]f a claimant raises multiple claims of ineffective assistance of counsel, the cumulative prejudice from those individual claims should be properly assessed under the prejudice prong of *Strickland.*" *State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012).

Rather than resolving these claims on direct appeal, we preserve them for postconviction relief proceedings. "[C]laims of ineffective assistance of counsel raised on direct appeal are ordinarily reserved for postconviction proceedings to allow full development of the facts surrounding counsel's conduct." *State v. Atley*, 564 N.W.2d 817, 833 (Iowa 1997). Counsel should have an opportunity to explain

and defend his trial decisions. *See State v. Lane*, 743 N.W.2d 178, 183 (Iowa 2007).

III.

LaJeunesse also asserts several claims in his pro se filings. None of the claims were preserved and can be addressed by this court only within the framework of an ineffective-assistance of counsel claim.

LaJeunesse first asserts a claim of prosecutorial misconduct. He claims he was prejudiced by the prosecutor's inflammatory statements throughout the trial. "[P]rosecutorial misconduct involves either the prosecutor's reckless disregard of a duty to comply with the applicable legal standard or obligation, or a prosecutor's intentional statements in violation of an obvious obligation, standard, or applicable rule." *State v. Coleman*, __ N.W.2d __, 2018 WL 672132, at *7 (Iowa 2018). "In determining whether misconduct is so prejudicial as to warrant a new trial, we examine the following: (1) The severity and pervasiveness of misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; (5) the extent to which the defense invited the misconduct." *Id.* at *8. Here, LaJeunesse does not identify particular the statements at issue. This court cannot serve as an advocate for the defendant and identify the statements for him.

LaJeunesse claims the prosecutor relied on false testimony and withheld exculpatory evidence. LaJeunesse appears to be referring to a domestic violence report filled out by Doe. She wrote:

> October 13, 2016: Defendant violently physically assaulted me by punching me repeatedly, strangling me three separate times, and

> verbally threatening to kill me several times. He put my head through a wall and ripped my hair out as well. This occurred at my home.

Other than referring to the document, LaJeunesse does not develop this argument further. There is thus nothing for this court to evaluate. Independently, we note this statement seems wholly consistent with the Doe's testimony.

LaJeunesse raises several arguments about a photographic exhibit he contends was blurry when blown up at trial. The exhibit showed the condition of the bathroom after the attack. LaJeunesse contends the location of a loofah sponge in the picture proves no assault took place in the shower but the jury could not see the loofah sponge in the blurry picture and was thus unable to make the conclusion. We note there is no evidence showing the photograph was blurry when published to the jury.

LaJeunesse also makes an underdeveloped claim there is no record he received *Miranda* warnings prior to interrogation. *Miranda* is not a magic bullet for the defendant; it only addresses the admissibility of inculpatory statements. *See State v. Tyler*, 867 N.W.2d 136, 171 (Iowa 2015). The defendant does not identify with any specificity the specific statements at issue or the prejudice allegedly suffered. In the absence of any particular claim or request for relief, there is nothing for us to evaluate.

LaJeunesse raises several other claims. He argues the prosecutor committed error in calling the medical examiner to testify because the examiner had experience as a coroner, which placed attempted murder in the mind of the jury. LaJeunesse claims the court was biased because it denied certain motions. LaJeunesse also accuses his defense attorney of deceit and collusion. Finally,

LaJeunesse mentions several other challenges to the prosecutor's conduct, the evidence in the case, and spoliation. He does not develop the arguments. A litigant's "random mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration." *Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994).

Rather than deny LaJeunesse's claims, we preserve them for further development in postconviction-relief proceedings in the event he seeks such relief.

IV.

We affirm the defendant's convictions.

**AFFIRMED.**