# IN THE COURT OF APPEALS OF IOWA

No. 16-1909
Filed August 16, 2017

**VINCENT MUMMAU,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Clayton County, Michael J.

Shubatt, Judge.

Defendant appeals the district court decision denying his petition for

postconviction relief from his conviction for third-degree sexual abuse.

**AFFIRMED.**

Angela Campbell of Dickey & Campbell Law Firm, P.L.C., Des Moines, for

appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee State.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

Vincent Mummau appeals the district court decision denying his petition for postconviction relief from his conviction for third-degree sexual abuse. We find Mummau has failed to show he received ineffective assistance from his defense and appellate counsel. We also find the postconviction court did not abuse its discretion in denying Mummau's request for a subpoena of certain cell phone records. We affirm the district court's decision denying Mummau's request for postconviction relief.

## I.    Background Facts & Proceedings

The following facts are set out in Mummau's direct appeal:

> On July 7, 2011, B.K. arrived at the home of Vincent Mummau to fix his television and pick up eggs. After working on one television in the lower level of the home, Mummau suggested she also see the one upstairs and offered her a tour of his home. The two walked upstairs to the second level of the home. Mummau asked whether she "need[ed] some loving" to which she responded "not today." The tour continued to Mummau's bedroom, where B.K. declined his advances again. At some point, Mummau forced B.K. onto the bed, landing on top of her. Mummau then instructed her to remove her clothes. B.K. stood and complied. Mummau performed various sex acts on B.K. and left the room. B.K. reported the incident to police several days later.

*State v. Mummau*, No. 12-1082, 2013 WL 2145994, at *1 (Iowa Ct. App. May 15, 2013) (footnote omitted). At the time of the incident, B.K. was a seventy-three year old woman in poor health.

Mummau was charged with sexual abuse in the third degree, in violation of Iowa Code section 709.4(1)(a) (2011). Mummau admitted he engaged in sexual conduct with B.K. but stated the encounter was consensual. A jury found Mummau guilty of third-degree sexual abuse. He was sentenced to a term of

imprisonment not to exceed ten years. Mummau's conviction was affirmed on appeal. *See id.* at *7.

On April 27, 2015, Mummau filed an application for postconviction relief, claiming he received ineffective assistance of counsel during his criminal trial. He claimed defense counsel (1) failed to object to certain evidence and failed to move for a mistrial; (2) failed to impeach witnesses properly; (3) failed to present character evidence; (4) failed to investigate evidence that could have been used to impeach B.K.; and (5) was generally ineffective. Mummau also claimed appellate counsel failed to raise issues that should have been raised.[1]

During the postconviction proceedings, Mummau filed a motion seeking the production of the cell phone records of B.K. and eight other people for thirty days before and thirty days after July 7, 2011. He stated the evidence was needed to show defense counsel did not adequately investigate impeachment evidence concerning B.K.'s testimony about who she told of the sexual assault and when she told them. The State resisted the motion. The court granted the motion as to B.K.'s cell phone records but denied the request for the cell phone records of the other people. Subsequently, B.K.'s estate objected to the order requiring the production of her cell phone records.[2] After a hearing, the court denied Mummau's motion to authorize the disclosure of B.K.'s cell phone records.

At the postconviction hearing, the deposition of defense counsel was presented. The district court found Mummau failed to show counsel breached an

---

[1] Mummau's counsel for his direct appeal was the same attorney who represented him during the criminal trial.
[2] By the time of the postconviction proceedings, B.K. was deceased.

essential duty or he was prejudiced by counsel's conduct. The court concluded Mummau failed to show he received ineffective assistance of counsel. Mummau now appeals the district court's decision.

## II.     Ineffective Assistance

We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, a defendant must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. *Id.* A defendant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

### A.     Vouching

**1.**     Mummau claims defense counsel should have objected because witnesses were improperly permitted to vouch for the credibility of B.K. A witness may not directly or indirectly render an opinion on the credibility of another witness. *See State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014). This is because a witness should not comment on a defendant's guilt or innocence. *State v. Brown*, 856 N.W.2d 685, 689 (Iowa 2014).

First, during the trial, Maria Farmer, a sexual assault response nurse who examined B.K., was asked, "Can you describe [B.K.'s] demeanor when you were getting her medical history from her?" The court overruled defense counsel's objections. Farmer then testified B.K. "was very open about what was going on and talked very strongly about the events that had occurred the night before, but by the time of the end of it, she was tearful, when it really got down to the details

of the event." We find there was no breach of duty because defense counsel did object to the question. Additionally, Farmer's testimony concerned B.K.'s demeanor and was not improper vouching. *See id.*

Second, Farmer was asked, "As a trained sexual assault response nurse, is a delay in reporting common?" Defense counsel raised several objections, which were overruled by the district court. Farmer answered, "Yes, it's common that they delay in receiving treatment." Defense counsel did not breach an essential duty because he objected to the question. Furthermore, Farmer's testimony was not improper because she gave no opinion about this specific case, stating only a delay was common. *See Dudley*, 856 N.W.2d at 676 (citing *State v. Payton*, 481 N.W.2d 325, 327 (Iowa 1992)).

Third, defense counsel asked Farmer if there was medical evidence that would dispute Mummau's version of the events and Farmer responded, "History taking in the medical profession is evidence. Your statement to me, just as in chest pain, is medical evidence. So, yes, medical evidence is what you state is wrong with you." This question and answer did not relate to improper vouching, and Mummau has not shown he received ineffective assistance on this ground.

Fourth, Deputy Brent Ostrander was asked why a photograph of Mummau was taken when he was not wearing a shirt. Ostrander replied, "I assume that it was the State's idea that since there is a sexual assault and at the time that the sexual assault was reported, it was believed that Vincent wasn't wearing a shirt." No objection was made to this statement. We find this statement does not involve improper vouching because Deputy Ostrander was not stating another witness was credible. He gave no opinion as to whether an investigation was

warranted, but stated there was an investigation of Mummau, which would have been apparent from the fact he was being prosecuted for sexual abuse. *Cf. Brown*, 856 N.W.2d at 689 (finding it was improper for an expert witness to state an investigation of a witness's account of sexual abuse was "clearly warranted"). Mummau has not shown he received ineffective assistance due to counsel's failure to object to the statement.

Fifth, Deputy Steven Holst testified B.K. was a strong woman. When questioned about this statement on cross-examination, Deputy Holst stated, "she was strong in the fact that she faced a traumatic experience and she was able to express her feelings about it." No objection was made. As the postconviction court pointed out, the evidence B.K. was a strong woman was consistent with the defense's theory she would not have complied with Mummau's request for sex if she did not agree with it. The postconviction court also noted an objection to the evidence would have drawn more attention to it. We conclude Mummau has not shown he received ineffective assistance due to defense counsel's failure to object.

**2.** Mummau claims defense counsel should have filed a motion for mistrial due to improper vouching for B.K. based on the following statements, which were objected to during the trial. Deputy Ostrander was asked to described B.K.'s demeanor and he stated, "My time with [B.K.], I have noticed her as a very direct and what I would consider an honest person." The district court sustained defense counsel's objection and directed the jury to disregard the answer. Also, when Deputy Ostrander was asked about B.K.'s demeanor, he

stated, "[B.K.] was fearful."[3]   Defense counsel's objection was denied by the court.  Special Agent Mike Krapfl testified, "In my opinion, [B.K.] did not go to the bed on her own."   The court sustained defense counsel's objection to the statement.

In his deposition, defense counsel testified to his reasons for not filing a motion for a mistrial:

> That jury that we had contained a lady who Vince went to church with, who ended up being the foreman of that jury, it had a lady whose brother had been wrongfully accused of sexual harassment, and I believe two or three other men who had been criminal defendants.
> I thought we had a favorable jury.  Vince always wanted to try to get this over with, as did I.  And I think Vince, if he's honest about it, and we had talked about it, felt we had a good jury.  To ask for a mistrial, if it was granted, would have put him seeking a retrial in front of a jury that would not be as favorable as what this jury seemed to me to be.

We conclude defense counsel engaged in a reasonable trial strategy to try the case to the jury already present, rather than seeking a mistrial.  *See State v. Ross*, 845 N.W.2d 692, 698 (Iowa 2014) (noting a claim of ineffective assistance requires "more than a showing that trial strategy backfired" or another attorney would have tried the case differently).   We agree with the district court's statement, "Further, given that the jury was perceived as favorable to the defense, it was reasonably strategic for counsel not to move for a mistrial over this issue."

---

[3]   We additionally find this statement about B.K.'s demeanor was not improper vouching.  *See Brown*, 856 N.W.2d at 689.

### B. Hearsay Evidence

In general, hearsay evidence is not admissible. Iowa R. Evid. 5.802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(c). Hearsay evidence may be admissible if it comes within one of the exceptions to the hearsay rule. *See* Iowa R. Evid. 5.803; *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006) ("Hearsay is not admissible unless it falls within one of several enumerated exceptions.").

During the criminal trial, the State presented a recording of a jail conversation between Mummau and Marvin Kahr, a mutual friend of Mummau and B.K. Defense counsel filed a motion to suppress and a motion in limine, and objected during the trial but the district court ruled the recording was admissible. Mummau now claims defense counsel should have sought to keep out portions of the recording on hearsay grounds. In his deposition, defense counsel stated if the tape was going to come in, it was better for the whole thing to come in. He stated parts of the recording were helpful to the defense. Defense counsel also stated, "[Y]ou have to conserve your objections when you're trying a case." We find defense counsel made a strategic decision not to object to the recording on hearsay grounds. As the postconviction court found, "This was not a random decision or an oversight on [defense counsel's] part."

Mummau claims defense counsel should have objected to B.K.'s testimony concerning Kahr's statements when she told him what had happened with Mummau. The statements—"Oh, my God," "Well, let's go to Oelwein, and we can talk about it," and "Are you going to turn him in?"—were not offered for

the truth of the matter asserted, and therefore, do not constitute hearsay. *See* Iowa R. Evid. 5.801(c). "Counsel does not fail to perform an essential duty by failing to raise a meritless objection." *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015).

B.K. also testified she talked to Deputy Holst, who told her she had ten years to report an offense of sexual abuse, said "What's going on?" and told her to get checked out at a hospital. Again, the statements were not offered for the truth of the matter asserted. *See* Iowa R. Evid. 5.801(c). Defense counsel had no obligation to object to the statements on hearsay grounds.

Deputy Ostrander testified "[B.K.] had conveyed to us at the time we arrived that she had a neighbor staying there to try to help her because she was fearful for her safety. She was fearful that something was going to happen now that this has come out." Defense counsel objected on hearsay grounds and the objection was denied by the district court. Mummau has not shown defense counsel breached an essential duty.

Deputy Ostrander testified concerning B.K.'s statements to him about what Mummau was wearing and described the sheets in his bedroom. The postconviction court found, "At least in part, this was a strategic decision by the defense because there were inconsistencies between what B.K. told Ostrander and what she said on other occasions. In a case largely dependent on credibility, any inconsistencies are valuable to the defense." The court additionally noted Mummau was not prejudiced by the statements because he did not deny B.K. came to his house on the day in question. We conclude Mummau has not shown he received ineffective assistance on this issue.

Deputy Ostrander testified Mummau's shorts were sent to the crime lab for DNA testing and they were positive for seminal fluid belonging to Mummau. Mummau claims the DNA evidence was hearsay and defense counsel should have objected. Even if the evidence was hearsay, it was not prejudicial to Mummau. He admitted to a sexual encounter with B.K., but claimed it was consensual, although B.K. now regretted the encounter. The fact his seminal fluid was in his shorts was not prejudicial and he was not harmed by counsel's failure to object.

Special Agent Krapfl testified Mummau told him he called Kahr and B.K. on July 7, 2011, but when Krapfl looked at cell phone records, he did not see where Mummau had called Kahr. Mummau claims defense counsel should have objected because the contents of the cell phone records were hearsay. The postconviction court stated:

> First, the testimony seems to verify Mummau's statement that he had, in fact, called B.K., which was helpful to the defense. Whether or not he called Kahr is a minor point in light of all of the evidence offered at trial, and Mummau has not shown a likelihood that the outcome of the trial would have been different if this testimony had been kept out.

We agree with the court's statements and conclude Mummau has not shown he received ineffective assistance of counsel on this ground.

### C. Confrontation Clause

Under the Confrontation Clauses of the United States and Iowa Constitutions, a defendant has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; Iowa Const. art. I, § 10. "A testimonial out-of-court statement made by a declarant who is unavailable to testify is

inadmissible if the defendant has not had an opportunity to cross-examine the declarant." *State v. Wells*, 738 N.W.2d 214, 218 (Iowa 2007).

Mummau briefly mentions the admission of the recording of his conversation with Kahr violated his rights under the Confrontation Clause because he was not allowed to cross-examine Kahr about the statements. He does not cite any authority or give further explanation of his claim. We conclude the issue has not been adequately raised. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

Mummau also claims the admission of the DNA results violated his rights under the Confrontation Clause and defense counsel should have objected to the admission of the evidence. The admission of evidence in violation of the Confrontation Clause does not require reversal if the error was harmless beyond a reasonable doubt *See id.* We find the guilty verdict was not attributable to the evidence Mummau's DNA was found in his shorts, and conclude any error in admitting the DNA evidence was harmless beyond a reasonable doubt.

### D.    Impeachment of B.K.

Mummau claims he received ineffective assistance because defense counsel did not properly impeach B.K. He states defense counsel should have done more to bring out inconsistencies in her testimony.[4]

---

[4]    Mummau relies in part on the inconsistencies between B.K.'s trial testimony in April 2012 and her statements in a civil deposition in October 2013. As the postconviction court pointed out, defense counsel "cannot be criticized for failing to impeach B.K. with deposition testimony that did not yet exist."

Defense counsel confronted B.K. with some of the inconsistencies in her statements. He stated, however, he felt it was more productive to attempt to show B.K. agreed to the sexual encounter with Mummau but changed her mind and had a case of regret rather than attempt to show she was a liar. Defense counsel testified, "I was concerned about making her appear to be more of a victim." We conclude defense counsel made a reasonable strategic decision concerning his questioning of B.K. We find Mummau has not shown defense counsel breached an essential duty by failing to impeach B.K. with absolutely every inconsistency in her statements. He has failed to show he received ineffective assistance of counsel on this ground.

**E.    Character Evidence**

Prior to trial, Mummau indicated he wanted to present the testimony of witnesses to show he was a peaceful, non-aggressive person. The district court ruled the testimony was inadmissible and Mummau made an offer of proof. On appeal, Mummau claimed the district court erred in not allowing testimony from the character witnesses. *Mummau*, 2016 WL 2145994, at *3. We found no error by the district court, concluding the evidence, as shown in the offers of proof, did not meet the foundational requirements found in *State v. Hobbs*, 172 N.W.2d 268, 271 (Iowa 1969). *Id.* at *5. In his postconviction action, Mummau claims he received ineffective assistance because defense counsel did not lay a sufficient foundation for the character evidence to be admissible.

Mummau had a prior conviction for assault in 2010, which the State claimed was sexually motivated. Defense counsel filed a motion in limine and the district court ruled the evidence of the conviction was inadmissible. Defense

counsel recognized putting on evidence to show Mummau was peaceful and non-aggressive made it much more likely the evidence of his prior conviction for assault would have been admissible to impeach the testimony of the character witnesses. The postconviction court stated:

> Thus, counsel was not ineffective for not offering this character evidence. Said another way, it was better for Mummau that this particular door remained closed. At the very least, Mummau cannot show that admission of the testimony likely would have led to a different outcome, and thus cannot show prejudice.

We agree with the postconviction court's conclusions and determine Mummau has not shown he received ineffective assistance of counsel on this issue.

### F.     Investigation

Mummau claims he received ineffective assistance because defense counsel did not adequately investigate the case. He states defense counsel should have done more to reveal evidence to show B.K. had a financial motivation to testify against him. After the criminal case, B.K. was a party in a civil action against Mummau. He states defense counsel should have investigated whether B.K. was a party in other lawsuits, her cell phone records, a domestic abuse petition she filed against another man, and other instances in which she called the police.

Defense counsel's duty to investigate "depends on the facts and circumstances of a particular case." *Schrier v. State*, 347 N.W.2d 657, 662 (Iowa 1984). "[T]he duty to investigate and prepare a defense is not limitless." *Id.* "It does not require that counsel pursue 'every path until it bears fruit or until all conceivable hope withers.'" *Id.* (citations omitted). "The extent of the

investigation required in each case turns on the peculiar facts and circumstances of that case." *Id.*

Defense counsel testified he believed it would have "made us look silly in front of the jury" to argue B.K. had a financial motive for alleging she was sexually abused by Mummau. We find defense counsel made a reasonable strategic decision not to pursue an argument during the criminal trial B.K. was making false statements for a financial motive. The cell phone records were not in evidence at the postconviction hearing and Mummau only speculates they would have provided evidence helpful to the defense. As to the other matters raised by Mummau, we find the evidence would not have been relevant to the charges against him. Additionally, we agree with the postconviction court's statement, "The Court finds nothing in this evidence to suggest that its admission likely would have changed the outcome." We conclude Mummau has not shown he received ineffective assistance due to defense counsel's failure to investigate.

## G. Appellate Counsel

Mummau claims he received ineffective assistance from appellate counsel because the issues he now raises concerning vouching were not raised on appeal. He also claims his hearsay and Confrontation Clause issues should have been raised on appeal. We have determined these issues are without merit. We agree with the postconviction court's statement, "There has been no showing that raising the issues on the direct appeal would have resulted in a reversal that would have vacated the conviction and sentence."

### III.     Cell Phone Records

Mummau claims the postconviction court abused its discretion by not permitting him to subpoena the cell phone records of B.K. and eight other people. He wanted the records to attempt to show defense counsel failed to conduct a reasonable investigation. Mummau states the cell phone records would show whether B.K. was truthful in her statements about who she contacted after her sexual encounter with him. "We review a district court's discovery decisions for an abuse of discretion." *Willard v. State*, 893 N.W.2d 52, 58 (Iowa 2017).

The district court first noted Mummau sought the records under 47 U.S.C. § 551(c)(2)(b), which applies only to governmental agencies. Because Mummau is not a governmental agency, he is not entitled to cell phone records under this statute. *See Interscope Records v. Does 1-7*, 494 F.Supp.2d 388, 390 (E.D. Va. 2007). Additionally, the court found the cell phone records were not reasonably calculated to lead to the discovery of admissible evidence. The records would not give Mummau any information about the content of B.K.'s calls. The court determined the cell phone records "would seem to have little bearing on the issues before the Court, given that [Mummau] knows of numerous individuals with whom [B.K.] had contact during the relevant time period." We conclude the district court did not abuse its discretion in denying Mummau's request for a subpoena of cell phone records.

We affirm the district court's decision denying Mummau's application for postconviction relief.

**AFFIRMED.**