Richard Leslie **SCHRIER**, Appellant,

v.

**STATE of Iowa**, Appellee.

No. 69606.

Supreme Court of Iowa.

April 11, 1984.

Bruce L. Cook, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and Dan L. Johnston, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and CARTER, JJ.

CARTER, Justice.

In 1978, the appellant, petitioner Richard Schrier, was indicted for murder as a result of the death of his two-year-old son. After a trial to a jury, petitioner was convicted of murder in the first degree and sexual abuse in the first degree. Petitioner effected a direct appeal to this court, which was based solely on a sufficiency of evidence issue. We affirmed his conviction in *State v. Schrier*, 300 N.W.2d 305 (Iowa 1981).

In 1982, petitioner filed an application in the district court for postconviction relief based on numerous claims that counsel at his 1979 murder trial provided ineffective assistance and that he was also provided ineffective assistance by counsel on his direct appeal. Following a full trial on these issues, the district court entered findings of fact and conclusions of law denying petitioner any relief. Petitioner has appealed from that determination. All of his claims on appeal relate to claimed inefficiency of trial and appellate counsel in several particulars.

Petitioner asserts, among other things, that he received ineffective assistance of his trial counsel with respect to: (1) failure to challenge the accuracy of the State's scientific evidence; (2) failure to conduct blood typing and sperm tests or to seek a favorable inference from the State's failure to conduct such tests; (3) failure to call petitioner as a witness at his trial; (4) failure to call witnesses to verify petitioner's limited access to the victim; (5) failure to object to certain testimony not shown to have been based on personal knowledge; (6) failure to object to statements made to police by petitioner's father; (7) failure to object to certain testimony concerning petitioner's absence from the state following his son's injuries; (8) failure to object to the inclusion of willful, premeditated murder as an alternative to felony murder in the jury instructions; (9) failure to object to an instruction permitting malice aforethought to be implied; (10) failure to object to omission of the element of general intent from instructions on sexual abuse; and (11)

failure to assert double jeopardy issues concerning prosecution and conviction of petitioner for both murder and sexual abuse. Petitioner also asserts that he was denied ineffective counsel on appeal by failure of his counsel on direct appeal to assert any of the foregoing complaints concerning his trial counsel and in failing to assert a law-of-the-case issue concerning the instructions on circumstantial evidence.

■■■■ Petitioner's claims on appeal are all posited on the sixth and fourteenth amendments to the federal constitution. We review each of the claims of ineffective assistance of counsel with an eye toward determining whether counsel's performance fell below the standards required by these constitutional guarantees. Factual questions surrounding violations of constitutional rights raised for the first time in postconviction proceedings are reviewed de novo. *Fryer v. State,* 325 N.W.2d 400, 407 (Iowa 1982); *Hamann v. State,* 324 N.W.2d 906, 909 (Iowa 1982); *Kellogg v. State,* 288 N.W.2d 561, 563 (Iowa 1980). Further discussion of pertinent facts is contained in our analysis of the legal issues which follows.

I. *Failure to Challenge the Accuracy of the State's Scientific Evidence of Sexual Abuse.*

■■■ Petitioner's first claim of ineffective assistance of counsel relates to the scientific evidence produced by the State at trial to show that the murder victim had been sexually abused. That evidence consisted of fluid specimens obtained by saline solution washings of the victim's throat, trachea, stomach and rectum. These specimens were analyzed in a hospital laboratory, and the results were positive for the presence of prostatic acid phosphatase, a substance produced in the male prostate gland and emitted with semen. Expert testimony produced by the State at petitioner's trial indicated that in order for acid phosphatase to be found at these body locations, the victim would have had to have been penetrated with a male penis.

In his application for postconviction relief, petitioner has asserted that his trial counsel's performance in response to this scientific evidence was below the constitutional standard of normal competence in that he (a) failed to adequately investigate the scientific significance of the laboratory tests, (b) failed to effectively cross-examine the State's witnesses as to the significance which these witnesses placed on the test results, and (c) failed to employ a qualified expert witness to controvert the opinion evidence offered by the State. Upon our review of the record of the original trial and the evidence produced at the postconviction hearing, we disagree with this contention.

■■■ In *State v. Miles,* 344 N.W.2d 231, 233 (Iowa 1984), we reaffirmed that a party will not be found to have been denied a fair trial due to inadequacy of counsel unless it is shown that (1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom. *See Fryer,* 325 N.W.2d at 412–13; *Henderson v. Scurr,* 313 N.W.2d 522, 524 (Iowa 1981); *Snethen v. State,* 308 N.W.2d 11, 14 (Iowa 1981). We have recognized that the Constitution does not require representation that is infallible. *Karasek v. State,* 310 N.W.2d 190, 192 (Iowa 1981). In determining whether the first condition of this two-pronged test is satisfied, it is neither practicable nor desirable to develop a particularized checklist of essential duties which counsel must meet in representing a defendant in a criminal proceeding.

■■■ As noted in *United States v. Decoster,* 624 F.2d 196, 203 (D.C.Cir.1979) (hereafter called *Decoster III*):

The defense attorney's function consists, in large part, of the application of professional judgment to an infinite variety of decisions in the development and prosecution of the case. A determination whether any given action or omission by counsel amounted to ineffective assistance cannot be divorced from consideration of the peculiar facts and circumstances that influenced counsel's judg-

ment. In this fact-laden atmosphere, categorical rules are not appropriate.

In commenting on counsel's duty to investigate, the court in *Decoster III* further noted (624 F.2d at 209–10):

The duty to investigate is a subset of the overall duty of defense counsel.... However, any claim of ineffectiveness must turn not on abstractions as to duty, but on an appraisal of consequences. And the development of the case before trial is an area of peculiar sensitivity in the attorney/client relationship.

. . . .

Our reflections on this point are congruent with the standard applicable when counsel for an indigent defendant seeks funds to obtain investigative services to assist in the preparation of the defense. While in general effective assistance of counsel embraces such an allowance it is far from automatic and "depends on the facts and circumstances of a particular case," with funds provided when counsel makes a showing of necessity of the specific subjects to be explored and of their likely materiality. ... It is all well and good for a millionaire to retain counsel with the instruction to "leave not the smallest stone unturned." But it goes too far to insist that such a course is a general constitutional mandate.

Other courts have recognized that the duty to investigate and prepare a defense is not limitless. It does not require that counsel pursue "every path until it bears fruit or until all conceivable hope withers." *United States v. Tucker*, 716 F.2d 576, 584 (9th Cir.1983); *Lovett v. Florida*, 627 F.2d 706, 708 (5th Cir.1980). The extent of the investigation required in each case turns on the peculiar facts and circumstances of that case. *Adams v. Balkcom*, 688 F.2d 734, 738 (11th Cir.1982); *Nelson v. Estelle*, 642 F.2d 903, 906 (5th Cir.1981).

The record in the present case shows that the assistant county attorney who prosecuted petitioner's charge opened up the State's entire file to petitioner's counsel. From this revelation and from the minutes of testimony describing the expected testimony of the laboratory technician, petitioner's counsel was made aware that scientific evidence would be offered tending to establish acts of sexual abuse based on positive laboratory tests for prostatic acid phosphatase. He was also advised that the chemical evidence indicating sexual abuse would be corroborated by the testimony of medical doctors who examined the victim and discovered a rectal dilation and rectal tear on his body. It is petitioner's contention in this postconviction proceeding that this knowledge created an obligation on the part of his trial counsel to seek verification from an independent expert concerning the significance of the laboratory findings.

While some showing was made by petitioner at his post-conviction hearing that expert opinion evidence may have been available to cast doubt on some of the State's scientific evidence, this is less certain than petitioner suggests in his brief and argument. At the postconviction hearing, petitioner presented the testimony of a forensic pathologist that the levels of acid phosphatase testified to by the medical witnesses at petitioner's trial were not unusually high and were within the range of acid phosphatase levels which might have been produced by the victim's own body functions. As the State points out, however, witnesses testified at petitioner's trial that there had been a qualitative testing which established that the specimens were prostatic acid phosphatase manufactured only in the prostate gland and emitted with semen. Petitioner's expert witness at the postconviction hearing did not suggest that the presence of prostatic acid phosphatase in the mouth, throat, trachea, stomach, and rectum was not evidence of sexual abuse.

Moreover, this witness's testimony concerning the quantitative levels of acid phosphatase within the victim's body cavities did not take into account the evidence produced at trial that the victim's body functions were continuing to perform up to the time the specimens were taken and that the victim had experienced substantial vomit-

ing and diarrhea. Dr. Steven Grabowski testified at Petitioner's trial that:

> I think that the normal function of the body, especially where this is found, is changing, so the stomach contents are constantly being moved through the stomach. The contents of the rectum are also being moved through, so very seldom does one type of substance stay in this part of the body for any length of time. It moves on. The same with the mouth; the same with the lungs; and the normal function of the body moves whatever's there onward. If it's in the trachea, it's normal for the body to move it out of the trachea into the pharynx, and either from the pharynx, down to the stomach or out of the mouth. Same thing with any rectal material. The normal procedure is for the body to remove it; and even with all this diarrhea that he was having on the first day, initially screening was done, which was high for acid phosphatase. The following day, if you notice, the rectal fluid washing was really low; so within a day, it had already dissipated.

The record suggests that it was on "the following day" referred to in Dr. Grabowski's testimony that the fluid samples were taken which formed the basis for the quantitative analysis made by petitioner's expert witness at the postconviction hearing.

■ In *State v. Blackford*, 335 N.W.2d 173, 178 (Iowa 1983), we recognized that to some extent counsel's trial performance must be judged by his primary theory of defense. Selection of the primary theory or theories of defense is a tactical matter. *State v. Mulder*, 313 N.W.2d 885, 891 (Iowa 1981). As revealed by our decision in petitioner's direct appeal, the State's case as to the identity of the perpetrator, and whether the alleged sexual abuse had in fact caused the victim's death were facially more appealing theories of defense than a possible battle of expert witnesses concerning the significance of the acid phosphatase levels. This would have become apparent to counsel at an early stage in his involvement in the case. We cannot conclude that given these circumstances his decision to forego developing the scientific aspects of the State's evidence was an unreasonable tactical decision or that it constituted other than conscientious, meaningful representation within the constitutional standard of performance. *See Hinkle v. State*, 290 N.W.2d 28, 30–31 (Iowa 1980).

We also conclude that petitioner has failed in connection with these claims to establish the standard of prejudice required by *Miles*, 344 N.W.2d at 234, as a requisite for postconviction relief. We can only conclude that such efforts would have produced at best a difference of opinion as to the significance of these laboratory test results. Based on the entire record, counsel's failure to inject this additional issue into the trial did not constitute an error of constitutional dimensions.

II. *Failure to Conduct Blood Typing and Sperm Tests or to Seek a Favorable Inference from the State's Failure to Conduct Such Tests.*

■ Petitioner next asserts that it was ineffective assistance for his trial counsel not to secure blood typing and sperm tests on fluids from the victim's body. In the alternative, he urges that it was ineffective assistance not to comment upon and seek favorable inferences from the State's apparent failure to conduct such tests.

As to the first claim, the record does not establish that by the time petitioner's counsel became involved with the case such tests could still have been successfully utilized on the victim's body fluids. As to the second claim, to the extent that counsel did not seek at trial to draw favorable inferences from the failure of the State to perform tests which, if performed, might well have been inconclusive, is not such a substantial deprivation to justify the overturning of his conviction.

III. *Failure to Call Petitioner as a Witness at His Criminal Trial.*

■ Petitioner next claims that his counsel at his murder trial was ineffective for failure to call him as a witness in his own behalf and in denying him his right to

testify. We find that petitioner has failed to establish these claims.

We will assume that only the defendant can choose whether or not to testify in a criminal case and that his choice cannot be ignored by his counsel. See in this regard *Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510, 53 L.Ed.2d 594, 607 (1977) (Burger, C.J., concurring). Counsel, of course, must take a stand on the issue based on counsel's perception as to what course best promotes his client's chances for obtaining a·successful result.

We find on our de novo review of the record in the present case that counsel advised petitioner against taking the stand at his murder trial, told him why, and petitioner acceded to counsel's recommendation. We credit the testimony of petitioner's trial counsel at the postconviction hearing that petitioner's decision in this regard amounted to more than silent acquiescence.

On the circumstances presented after a verdict has been returned and a conviction has resulted, a new trial cannot be granted because of a hindsight determination that petitioner's testimony might have been helpful. Such relief may be granted only upon a showing that counsel's advice fell below the constitutional standard. In the present case, the record establishes to our satisfaction that counsel reasonably believed that petitioner had a good chance to secure a directed verdict of acquittal at the conclusion of the State's evidence. Counsel chose not to jeopardize this position by potential unexpected consequences which might result from calling witnesses for the defense. Because this determination of counsel is supportable as a trial strategy, it affords petitioner no basis for relief. *Hinkle,* 290 N.W.2d at 30–31.

VI. *Failure to Call Witnesses to Verify Petitioner's Limited Access to Victim at the Time of the Crime.*

Petitioner also suggests that his trial counsel was ineffective in failing to call as witnesses certain family members present at or about the time of the crime in order to confirm his limited access to the victim.

Petitioner's brother, Randy, age 17, was called as a State's witness at petitioner's trial. Randy Schrier testified that sequentially on the morning of the crime he observed the two-year-old victim up and around the house, saw him exit the house to the rear yard, viewed him through a window playing in the rear yard, and soon thereafter saw petitioner exit the house. He testified that there was at most five to ten seconds of elapsed time between petitioner's exit from the house and petitioner's discovery of the victim in an unconscious condition.

Petitioner asserts in his application for postconviction relief that his mother and another brother could have corroborated Randy's testimony concerning these sequential events and that it was ineffective assistance of counsel not to have called them as witnesses for the defense. We find that this complaint affords petitioner no basis for relief for two reasons. First, the withholding of cumulative testimony is not a sufficient showing of prejudice under the standards we adopted in *State v. Miles.* Second, counsel's failure to call these witnesses involved the consistent application of the same trial strategy which supported his determination not to call petitioner as a witness. He was banking on a directed verdict and did not wish to risk putting witnesses on the stand who might have unexpectedly opened up something which would upset that expectation.

V. *Failure to Object to Testimony Not Shown to Have Been Based on Personal Knowledge.*

Petitioner also claims that it was ineffective assistance for his trial counsel not to have objected to the second of the following questions:

Q. You didn't do anything to Matthew that night or that morning, did you?

A. No, sir.

Q. Did Frankie?

A. No.

Petitioner posits this contention on the belief that the record shows that Randy did not have knowledge of Frankie's activities

throughout the entire period of time embraced in these questions. We find no merit in this contention. The only time frame which is significant is the period of time during which the victim was attacked. If we accept petitioner's own theory on this appeal that this occurred after Randy viewed the child playing in the yard, it does not appear that Randy was unaware of Frankie's whereabouts at this time.

VI. *Failure to Object to Statements Made to Police by Petitioner's Father.*

██ In an apparent effort to impeach the testimony of petitioner's father, Richard Carl Schrier, called as its own witness, the State offered a prior statement of Mr. Schrier which he had testified that he did not recall having made. During the subsequent examination of a police officer, the prosecutor asked:

Q. Well, in any event, ... without repeating what you told Mr. Schrier, what was Mr. Schrier's response after you had the conversation with him?

A. He made a statement that, if he had known then what he knew now, that he would have never allowed Matthew [the victim] to sleep with Richard [the petitioner] that night.

Petitioner asserts in his application for postconviction relief that it was ineffective assistance of counsel and highly prejudicial for his trial counsel not to have objected to the foregoing question as hearsay, nonprobative and collateral.

In his testimony, Richard Carl Schrier indicated no knowledge of who had committed the crime, and he provided no alibi or other defense for petitioner. Given the limited nature of his testimony, the question and answer above might be considered an attempt by the State to impeach a witness on a collateral issue which under the guidelines established in *State v. Gilmore,* 259 N.W.2d 846, 853–58 (Iowa 1977), is not permitted. Assuming that proper objection would have kept the answer out and should have been made by petitioner's trial counsel, this evidence was offered as a prior inconsistent statement by the witness after

he testified he did not recall making it. Its import is far from clear. Its effect beyond impeachment of an insignificant witness is speculative. Under the standards announced in *State v. Miles,* error of constitutional dimensions has not been shown.

VII. *Failure to Object to Testimony of Richard Carl Schrier Concerning Petitioner's Trip to California.*

Richard Carl Schrier also testified as follows:

Q. Did you send Ricky [petitioner] to California?

A. Yes, I did.

The foregoing question related to activities which took place shortly after the victim's injury and hospitalization.

██ It is urged in this postconviction proceeding that this testimony was inadmissible and that counsel's failure to object to its use as evidence constituted ineffective assistance. We find the evidence of petitioner's demeanor and activities immediately following his son's injuries to be relevant and material to the jury's understanding of the events surrounding the victim's injuries. Such acts may provide a legitimate basis for inferring consciousness of guilt. *State v. Holt,* 261 Iowa 1089, 1093, 156 N.W.2d 884, 886 (1968); *State v. Benson,* 230 Iowa 1168, 1171, 300 N.W. 275, 276–77 (1941). Counsel's failure to object to the evidence was not a breach of an essential duty or prejudicial.

VIII. *Failure to Object to Inclusion of Willful, Premeditated Murder as an Alternative to Felony Murder in Jury Instructions on Elements of First-Degree Murder.*

██ In the marshalling instruction on the elements of first-degree murder, the court advised the jury:

Before the defendant can be found guilty of the crime of murder in the first degree ... the State must establish by the evidence beyond a reasonable doubt each of the following elements:

1.  ... the defendant inflicted injury upon [the victim].

2.  ... [the victim] died as a result of being so injured.

3.  ... the defendant did so with malice aforethought, willfully, deliberately, premeditatedly, and with a specific intent to kill [the victim] or that the injury inflicted upon [the victim] was committed while the defendant, with malice aforethought, was participating in the offense of sexual abuse.

In his application for postconviction relief, the petitioner claims that it was error to permit the jury to find guilt of first-degree murder on a theory of willful, premeditated murder. He asserts that counsel's failure to assert this claim at trial was a denial of his constitutional right to effective assistance of counsel.

Petitioner's claim that willful, premeditated murder was not properly in the case is based on two grounds: that there was insufficient evidence to permit a finding of willful, premeditated murder, and that the indictment specifically limited the charge to felony murder. Assuming that the petitioner is correct that a theory of willful, premeditated murder should not have been submitted to the jury as an alternative means of finding first-degree murder, we find this instruction created no prejudice on the facts of the present case.

As was true in the case of *State v. Williams*, 285 N.W.2d 248, 270 (Iowa 1979), the instructions on murder in the first degree which were given at petitioner's trial allowed alternative juror findings, not on the *actus reus* of the crime but on the elements of intent. Under these instructions, the requisite intent for murder in the first degree could be established directly by proof of a willful, premeditated act with specific intent to kill or, as permitted by statute, by showing that the murder occurred while petitioner was participating in a forcible felony. Petitioner doesn't contend that the instructions on felony murder were improper. He only complains that the jury should not have been permitted to consider willful, premeditated murder as an alternative to felony murder.

We doubt that there was any conceivable way under the evidence in the present case that the jury could have found the petitioner perpetrated the *actus reus* of the present crime without also finding that this was done while participating in a forcible felony. Any lingering doubt on that question is dispelled, however, based on the jury's verdict finding petitioner guilty of sexual abuse in the first degree based on the same evidence upon which he was convicted of murder in the first degree. The two verdicts in combination establish to a certainty petitioner's guilt of all of the essential elements necessary to establish murder in the first degree under a felony murder theory. Instructing on willful, premeditated murder, even if error, was not prejudicial.

IX. *Failure to Object to Instruction on Implied Malice.*

■ Next, petitioner asserts that trial counsel was ineffective in not objecting to the court's instruction at his murder trial that malice aforethought may be implied from an act of sexual abuse. As a basis for this claim, he contends that such instruction is contrary to *State v. Galloway*, 275 N.W.2d 736, 738 (Iowa 1979). We disagree.

The reversal of defendant's conviction in *Galloway* was based upon a failure of the court to instruct the jury that malice aforethought was an element of first-degree murder under a felony murder theory. In the present case, the court did instruct the jury at petitioner's murder trial that malice aforethought was an element of first-degree murder under a theory of felony murder. The reason for the reversal in *Galloway* is absent in the present case.

The issue being urged by petitioner concerns the means by which the element of malice aforethought may be proved. The challenged instruction finds support in *State v. Taylor*, 287 N.W.2d 576, 578 (Iowa 1980). Failure of counsel to object to the

instruction affords petitioner no basis for relief.

X. *Failure to Object to Instruction on Sexual Abuse Which Omitted Element of General Criminal Intent.*

■ Petitioner claims that his trial counsel was guilty of ineffective assistance for failing to object to the court's instruction defining sexual abuse so as not to require a showing of general criminal intent. We find no merit in this claim in view of our rejection of similar claims of ineffective assistance in *State v. Miles*, 344 N.W.2d at 235 and *State v. Blackford*, 335 N.W.2d at 178.

XI. *Failure to Raise the Double Jeopardy Issue.*

Next, petitioner claims that both his trial counsel and appellate counsel were ineffective for failure to raise a double jeopardy claim seeking to preclude his conviction and sentence on both murder in the first degree and sexual abuse in the first degree.

■ The State urges that under our concept of "deliberate bypass" discussed in *Fryer v. State*, 325 N.W.2d at 404, the petitioner is barred from now asserting this issue for the first time in a postconviction proceeding. The record does indicate that there was a deliberate choice made by counsel at petitioner's trial and on his direct appeal to not raise a double jeopardy issue. That choice does not, however, bar our consideration of whether this decision was ineffective assistance of counsel.

■ We have consistently rejected the concept of "episodic" double jeopardy. *State v. Cabbell*, 252 N.W.2d 451, 452 (Iowa 1977); *State v. Birkestrand*, 239 N.W.2d 353, 364 (Iowa 1976); *State v. O'Kelly*, 211 N.W.2d 589, 593 (Iowa 1973). If a requisite element of one offense is not necessarily essential to conviction of the other under the so-called "statutory test," no double jeopardy claim is presented. *Birkestrand*, 239 N.W.2d at 364.

■ Under the rationale of *State v. Aswegan*, 331 N.W.2d 93, 97–98 (Iowa 1983), neither the underlying felony of sex-ual abuse nor the offense of sexual abuse in the first degree of which petitioner was convicted meets the statutory test for an included offense under a charge of felony murder. We therefore conclude that the underlying legal issue on which this ineffective assistance of counsel claim is based is not meritorious. This conclusion also comports with the federal concept of double jeopardy set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 308 (1932) which was most recently approved in *Illinois v. Vitale*, 447 U.S. 410, 416–22, 100 S.Ct. 2260, 2265–67, 65 L.Ed.2d 228, 233–37 (1980).

XII. *Ineffective Assistance of Appellate Counsel.*

■ Finally, we consider the arguments of petitioner in relation to a claim of ineffective assistance of his counsel on direct appeal from his convictions. To the extent that these claims relate to the failure of appellate counsel to assert the same claims of ineffective assistance of trial counsel which are now being urged in this postconviction proceeding, we reject these claims for the same reason that we have rejected the claims lodged against trial counsel.

■ One claim is made solely against appellate counsel. That is that counsel representing petitioner on his direct appeal should have contended that this court was bound to review the sufficiency of the evidence on appeal under the tests set forth in the trial court's instructions to the jury concerning the method of viewing circumstantial evidence rather than under the test we established in *State v. O'Connell*, 275 N.W.2d 197 (Iowa 1979). We find no merit in this contention. An accused who receives instructions on the evidence in the trial court which are more favorable to himself than he is entitled to receive and is nonetheless convicted, cannot seek to perpetuate this advantage for purposes of appellate review.

■ We have considered all issues and claims presented on appeal and can find no basis for reversing the judgment of the

postconviction court denying relief to petitioner. In making this determination, we have reviewed the effect of the various claims both individually and cumulatively and find that it has not been established that petitioner was denied a fair trial. The judgment of the district court is affirmed.

AFFIRMED.