# IN THE COURT OF APPEALS OF IOWA

No. 23-1774
Filed November 13, 2024

**CORNELIUS TYRONE BROWN,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel Dalrymple,
Judge.

An applicant appeals the denial of postconviction relief from his second-degree sexual assault conviction. **AFFIRMED.**

Elizabeth K. Elsten, Spirit Lake, for appellant.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Considered by Schumacher, P.J., Langholz, J., and Carr, S.J.* Buller, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**LANGHOLZ, Judge.**

Cornelius Brown was convicted of second-degree sexual abuse after beating a victim and forcing his mouth onto her genitals. Brown applied for postconviction relief, arguing he received ineffective assistance of counsel because his counsel should have subpoenaed documents and interviewed two witnesses to more accurately portray his relationship with the victim. The district court denied postconviction relief, finding that counsel did not breach any essential duty in forgoing the records and witness testimony and that Brown was not prejudiced by their omission.

Brown appeals, and we affirm based on the lack of prejudice. Brown has not shown that any overlooked evidence would have moved the needle toward reasonable doubt. None of the identified documents relate to, let alone contradict, the evidence showing Brown performed a sex act against the victim's will using force creating a substantial risk of death or serious injury. Worse, his two witnesses both contradicted his trial testimony, which would have damaged his defense and credibility. So regardless of whether defense counsel breached an essential duty, Brown has not shown a reasonable probability of a different outcome in his trial. We thus affirm the court's denial of postconviction relief.

I.

In 2016, Brown was convicted of second-degree sexual abuse. During his criminal trial, the State proved the following material facts.

Brown and the victim had been friends since high school. Around midnight one night, Brown knocked on the victim's door, asking to use her bathroom and smelling of alcohol. After leaving the bathroom, Brown asked the victim why she

refused to be his girlfriend. The victim told him she was not interested in a relationship. Brown then hit the victim—punching her repeatedly in the face with a closed fist. After that, he shoved her into the windowsill, causing the blinds to fall onto her.

The victim tried to fight back—though Brown stood over six feet tall while the victim was just under five feet—and the two ended up on the floor. Brown then began strangling her. The victim managed to escape his grasp and ran to the bathroom. She grabbed a bleach cleaning spray and sprayed Brown in the face. In response, Brown shoved her into the bathtub, again attempting to strangle her. Brown then told the victim he loved her, picked her out of the tub, and took her back to the bedroom. He briefly allowed the victim to rinse the blood from her mouth, but then resumed beating her. The victim again managed to escape the apartment and banged on a neighbor's door for help. No one answered.

Brown dragged the victim by her hair back into the apartment. He then yanked her onto the bed and forced his mouth onto her vagina—the victim felt burning from the bleach she had sprayed onto his face. The victim struggled and kicked Brown off her. Brown then heard neighbors banging on the apartment door, asking to see the victim. He narrowly opened the door and told them all was fine.

Brown shoved the victim back into her bedroom and told her he would leave if she allowed him to perform oral sex. The victim thought Brown planned to kill her and asked to call her son one last time. Brown handed the victim her phone, and the victim used the opening to bolt from the apartment. She ran to a neighbor and called her father, who arrived with law enforcement a few minutes later.

Brown's attack caused the victim to suffer two black eyes, swollen and split lips, scratches across her body, ripped out hair, and lockjaw from the strangling.

Brown was taken into custody and ultimately charged with second-degree sexual abuse and false imprisonment. During a three-day bench trial, the victim testified about the attack, along with several law enforcement and medical witnesses. Brown testified in his defense. After the case was submitted, the district court found Brown guilty as charged and sentenced him to twenty-five years in prison.[1] We affirmed Brown's convictions on appeal. *See State v. Brown*, No. 16-1118, 2017 WL 2181568, at *3–4 (Iowa Ct. App. May 17, 2017).

Brown now seeks postconviction relief, alleging his defense counsel provided ineffective assistance by failing to adequately investigate his case. In particular, Brown argues counsel should have subpoenaed phone, social media, and financial records, which would have better contextualized his relationship with the victim and corroborated his version of events leading up to his arrival at the victim's apartment. He also asserts counsel never interviewed potential witnesses who would have cast doubt on the victim's portrayal of their relationship.

After a half-day trial, the postconviction court denied relief. The court found none of the unsubpoenaed records would have weakened any material fact at trial. As for the unexplored witnesses, the court likewise found none of their testimonies would have made a difference, as they had "little firsthand information." And so, the postconviction court found counsel did not breach any essential duty, nor was Brown prejudiced by counsel's actions. Brown now appeals.

---

[1] Brown was also sentenced to one year of incarceration for the false-imprisonment conviction, which he has since discharged.

II.

Criminal defendants are constitutionally entitled to assistance of counsel. *See* U.S. Const. amend. VI; Iowa Const. art. I, § 10. We give force to that constitutional demand by requiring counsel to provide effective assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). And criminal defendants who believe their defense counsel fell below the constitutional floor may petition for postconviction relief. *See* Iowa Code § 822.2(1)(a) (2017). To prove ineffective assistance, a defendant must show "both that counsel breached an essential duty and that constitutional prejudice resulted." *Smith v. State*, 7 N.W.3d 723, 726 (Iowa 2024). We review the postconviction court's ruling on ineffective-assistance issues de novo. *Id.* at 725.

A defendant must establish counsel breached an essential duty by proving by a preponderance of the evidence that counsel "did not meet the standard of performance required by a reasonably competent practitioner." *Id.* at 726 (cleaned up). It is not enough to show "[i]mprovident trial strategy, miscalculated tactics or mistakes in judgment." *Id.* (cleaned up). Rather, we presume counsel performed competently and will only intervene when errors are so serious they undermine the adversarial guarantee of the Sixth Amendment. *Id.* Relevant here, the degree of counsel's duty to investigate "turns on the peculiar facts and circumstances of" each case. *Schrier v. State*, 347 N.W.2d 657, 662 (Iowa 1984).

And even if we locate unprofessional errors, the defendant must still show constitutional prejudice. Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To that end, counsel's errors must

go beyond merely impairing the defendant in presenting a defense. *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001). Instead, we ask "whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* (cleaned up). And "[i]f the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Id.* at 142.

We choose to resolve Brown's appeal under *Strickland*'s prejudice prong. During his criminal trial, Brown confirmed much of the victim's account. He admitted punching the victim "again and again," hitting her with a closed fist on her head, face, and mouth. He also described being "blinded" by bleach cleaner. Brown understood he hurt the victim "very bad" and saw her shaking, bleeding, and crying. And he testified to knowing the victim feared she would die that night.

Brown did contest whether any sex act occurred, testifying that he did not "want to have sex with" the victim. Yet Brown repeatedly testified to desiring the victim and wanting to be in a relationship with her. So when considering second-degree sexual abuse, the district court was left to weigh Brown's conflicting testimony against the victim's credible account, DNA testing showing traces of male DNA on the victim's external genitalia, and Brown's police interview where he guessed the victim was accusing him of rape.

Brown's unsubpoenaed evidence does not move the needle toward reasonable doubt. Brown points to his insurance policy listing the victim and her son as his beneficiaries, documents showing he paid the victim's rent, messages from the victim asking Brown to come over that evening, and financial records verifying his conduct before arriving at the victim's apartment. He argues this

evidence casts doubt on the victim's more limited characterization of their relationship, and in turn negates the victim's credibility.

But none of this evidence contradicts, or even undermines, the evidence proving second-degree sexual abuse—that Brown performed a sex act against the victim's will and did so using "force creating a substantial risk of death or serious injury" to the victim. *See* Iowa Code §§ 709.1(1), 709.3(1)(a). Even if Brown and the victim were financially intertwined, or she had invited him over, that information does not dent Brown's testimony showing an escalating course of violent conduct or the victim's testimony credibly depicting the moment of sexual abuse. So Brown has not shown "a reasonable probability that . . . the result of proceeding would have been different" if defense counsel had introduced these records. *Strickland*, 466 U.S. at 694.

Nor do Brown's uninterviewed witnesses undermine our faith in the verdict. While the charges were pending, Brown identified two people—his sister and brother-in-law—as potential witnesses who could testify to Brown's relationship with the victim. During the postconviction trial, Brown's sister explained Brown and the victim were more than friends, though much of her information came from Brown. And Brown's brother-in-law likewise testified about the nature of the victim's relationship with Brown, again mostly relaying secondhand information. Yet neither witness's testimony weakens the evidence proving second-degree sexual abuse.

Further, had Brown offered both witnesses, they would have undermined his central defense—they each testified that Brown wanted a sexual relationship with the victim. Indeed, when the brother-in-law was shown Brown's trial testimony

denying sexual feelings for the victim, the brother-in-law responded, "Well he must be lying because I had seen it with my own eyes."  Brown was not prejudiced by his counsel passing on two witnesses who would have damaged his defense and refuted his testimony.  *See Kane v. State*, 436 N.W.2d 624, 629 (Iowa 1989). Because Brown has not shown a reasonable probability that any of the claimed errors caused prejudice, we affirm the district court's denial of postconviction relief.

**AFFIRMED.**