# IN THE COURT OF APPEALS OF IOWA

No. 24-0067
Filed February 19, 2025

**NICHOLAS JAMES FORD,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Melissa Anderson-Seeber, Judge.

A defendant appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Daniel M. Northfield, Urbandale, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee State.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

Nicholas Ford appeals the district court's ruling denying his application for postconviction relief (PCR). On appeal, he contends the district court erred in denying his PCR application because (1) he received ineffective assistance of counsel during his plea-bargaining process; and (2) he is actually innocent.

Upon our de novo review of the record, we affirm.

## I. Background Facts and Proceedings

On the night of March 26, 2021, Ford was involved in a physical altercation with his father—Daniel Ford. At the time of the altercation, Ford had been living in his parents' house for close to five years. The incident started after Ford repeatedly interrupted Daniel during a phone call to ask for money. After Daniel ended his phone call, Ford again asked him for money. Daniel responded that he did not have any money to give to Ford.

At this point, Ford became violent. Ford grabbed Daniel "by the jacket and started pushing [him] around." Daniel attempted to escape from his son's attack by going to a bedroom in the home to call 911. However, Ford prevented this by following Daniel, snatching his phone from his hands, and smashing it in half. After destroying Daniel's phone, Ford resumed his attack. Ford continued to shove Daniel and punched him in the abdomen below the ribs. Ford's punch caused swelling and a noticeable red mark on Daniel's abdomen.

Daniel was eventually able to free himself from Ford's assault. He then sprinted out of the residence and ran to the Cedar Falls Police Department to report Ford's assault. After arriving at the police department, Daniel spoke briefly with officer Adam Hancock. Officer Hancock observed that Daniel had swelling and a

red mark on his abdomen that was "consistent with a mark from being punched." Ford was arrested one week later for the assault on Daniel.

Following his arrest, Ford was charged by trial information with domestic abuse assault causing bodily injury, third offense, in violation of Iowa Code section 708.2A(4) (2024). The trial information also charged a sentencing enhancement based on Ford's status as a habitual offender. Ford has at least two previous convictions for domestic abuse assault. One of those convictions involved an assault on Daniel.

Throughout the underlying criminal case, Ford was represented by attorney Laura Gavigan. Ford indicated to Gavigan that he wanted to resolve the case "fairly quickly" and "wanted to get moving as quickly as possible." Given his criminal history and active probation, Ford was well aware that he was unlikely to avoid prison time. At the time the underlying criminal case was initiated, Ford's mother was suffering from chronic obstructive pulmonary disease. As Ford testified at his PCR trial, he wanted to resolve the case quickly

> to buy some more time to be with my mom because I knew she was about to pass away, and I thought from everything that I heard and everything that I remember of prison, is that, you know, they were kind of—six to eight months you'd do in prison on a five-year charge, and all I could think about is if I could get out of that jail and then to Oakdale and get my time started, maybe I can get released or get some sort of parole and be out before my mom passes away.

Due to Ford's desire to quickly resolve his case, Gavigan admittedly "didn't really do any investigation." Instead, she focused her efforts on securing a favorable plea agreement for Ford. She was successful in this regard. After negotiations with the prosecutor, she was able to get the State to agree to drop the habitual offender sentencing enhancement. Additionally, she convinced the State to agree

to recommend that his sentence in the underlying criminal case run concurrent to his sentences imposed in six separate criminal cases.

Following a meeting with Gavigan to discuss his plea agreement, Ford signed a written guilty plea that was filed with the district court. For his third domestic abuse assault conviction, Ford received an indeterminate five-year sentence with a one-year mandatory minimum. The district court ordered Ford's sentence to run concurrently with his sentences from the six separate criminal cases.

A few months after he was sentenced, Ford filed a PCR application. Relevant to this appeal, Ford asserted in his application that he received ineffective assistance of counsel from Gavigan because she failed to adequately communicate with him and investigate his case. Additionally, he asserted a claim of actual innocence. The district court held a PCR trial in October 2022, during which it heard testimony from Ford and Gavigan. Following the PCR trial, the district court issued its ruling denying Ford's application.

Ford now appeals.

## II. Standard of Review.

We review claims for ineffective assistance of counsel de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). To the extent an applicant's claim of actual innocence raises constitutional questions, our review is also de novo. *Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019).

## III. Analysis

Ford makes two arguments: that his trial counsel was ineffective by failing to adequately investigate his case (which also includes complaints that she did not

adequately communicate with him about the case) and that he is actually innocent. We address each argument separately.

## A. Ineffective Assistance of Counsel

To establish a claim for ineffective assistance of counsel, an applicant must prove their counsel failed to perform an essential duty and that prejudice resulted. *State v. Doolin*, 942 N.W.2d 500, 507 (Iowa 2020). For breach of an essential duty, "[i]mprovident trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective counsel." *Hinkle v. State*, 290 N.W.2d 28, 34 (1980). "Representation by counsel is presumed competent, and a defendant has the burden to prove by a preponderance of the evidence that counsel was ineffective." *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992). To establish prejudice in the plea-bargaining context, an applicant must show "there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021) (citation omitted). We may resolve an applicant's ineffective assistance claim either on the breach of duty or prejudice prong, and failure to establish either one precludes relief. *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015).

We elect to resolve Ford's claims on the breach of an essential duty prong.

### 1. Failure to Investigate

Ford argues that his attorney failed to perform an essential duty by declining to adequately investigate the facts of his case. In support of this argument, he offers assertions that his father wanted to have the charge against him dropped. We interpret this argument to suggest that, had Gavigan conducted an

investigation and spoken with Ford's father, she would have discovered exculpatory evidence. Thus, Ford claims Gavigan breached an essential duty. We disagree.

We begin by noting some general principles related to counsel's duty to investigate their clients' cases. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984). But counsel's duty to investigate is not limitless. *Schrier v. State*, 347 N.W.2d 657, 662 (Iowa 1984). Counsel is not required to "pursue 'every path until it bears fruit or until all conceivable hope withers.'" *Id.* (citation omitted). "The extent of the investigation required in each case turns on the peculiar facts and circumstances of that case." *Id.*

Under the facts presented here, we believe Gavigan's decision not to thoroughly investigate Ford's case was a reasonable one given the circumstances. As Ford testified at his PCR trial, he wished to resolve the case quickly and begin serving time in order to have an opportunity to potentially see his mother before she passed away from illness. Ford was aware he was unlikely to avoid prison time for his third conviction for domestic abuse assault. Given Ford's admitted goal to resolve the case quickly, we cannot conclude Gavigan's decision not to conduct a thorough investigation amounts to a breach of an essential duty. Such a strategic decision was reasonable under the facts of this case. *See Schrier*, 657 N.W.2d at 662. It is also worth noting that Ford himself never produced the

evidence he claims his trial counsel failed to uncover by failing to investigate (e.g., a recantation by his father). *See, e.g.*, *Luke v. State*, 465 N.W.2d 898, 902 (Iowa Ct. App. 1990) (finding a petitioner's failure-to-investigate claim meritless where the petitioner "d[id] not present evidence the witnesses would have, in fact, testified" to the exculpatory evidence counsel allegedly failed to develop). Further, the evidence Ford asserts Gavigan should have investigated—an uncorroborated claim that his father wanted the charge to be dropped—is far from exculpatory. Ford's argument on this point fails to appreciate that wishing for charges to be dropped is different from the events giving rise to the charge having not occurred. In other words, that an assault victim wants charges to be dropped does not mean they weren't assaulted. Thus, any argument asserting Ford's father wanted the charge dropped is not evidence that he was not assaulted by Ford.[1] Other evidence showed that an assault occurred, including the injury observed on Ford's father shortly thereafter. And counsel is not required to investigate a defense for which the merits are "speculative" at best. *Luke*, 465 N.W.2d at 902.

Accordingly, we conclude counsel did not breach an essential duty by failing to conduct an investigation.

*2. Failure to Communicate*

Next, Ford claims Gavigan provided ineffective assistance because she failed to adequately communicate with him about his case. In support of his argument, Ford points to his testimony from his PCR trial, which asserts Gavigan

---

[1] We note Ford only vaguely argues that Gavigan should have investigated his claim that his father wanted the charge dropped. But he does not assert his father wanted the charge dropped because an assault never occurred.

did not respond to repeated messages and only came to see him in jail once. We disagree.

We begin our analysis on this point by noting there is conflicting evidence in the record regarding how much Gavigan communicated with Ford about his case. Essentially, Ford testified that he only spoke to his attorney twice about his case—once at his arraignment, and once at the jail when Gavigan discussed the plea agreement with him. He also asserted that Gavigan did not respond to messages he sent to her via the jail communication system. However, Gavigan testified that she spoke with Ford in jail and responded to eleven messages he sent to her through the jail communication system.

But we need not resolve the conflicting evidence because Ford has not explained what information Gavigan would have uncovered or how the result of the proceedings would have been different if she had communicated with him more. Thus, we cannot conclude he has established that Gavigan breached an essential duty by not adequately communicating with him about his case, nor can we find the requisite prejudice. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) ("When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job.").

## B. Actual Innocence

Finally, Ford argues that he is actually innocent. To support his argument, he points to his testimony from his PCR trial in which he denied physically assaulting his father. Additionally, he claims his desire to secure a plea agreement to quickly resolve his case lends credence to his claim that he is actually innocent. We disagree.

In recent years, our supreme court has permitted PCR applicants to assert freestanding claims of actual innocence even after pleading guilty. *Schmidt v. State*, 909 N.W.2d 778, 795 (Iowa 2018). PCR applicants raising actual-innocence claims must show "by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant." *Dewberry v. State*, 941 N.W.2d 1, 5 (Iowa 2019) (citation omitted). To this end, an applicant must show "factual innocence, not mere legal insufficiency." *Id.* at 7 (citation omitted).

Ford cannot clear this high hurdle. A brief recitation of the evidence demonstrates this. First, Ford's father had actual, documented injuries shown to law enforcement. Ford's father also made a contemporaneous report to law enforcement about being assaulted by his son. A reasonable fact finder could convict Ford based upon such evidence. *See State v. Richards*, No. 18-0522, 2019 WL 1057886, at *8 (Iowa Ct. App. Mar. 6, 2016) (finding victim's statements to officers, her visible injuries, and the defendant's admissions in jailhouse phone calls were sufficient to sustain a conviction for domestic abuse assault). Even taking into consideration Ford's denial of the assault, we cannot conclude no reasonable fact finder could convict him.

Thus, we reject this argument.

## IV. Conclusion

In short, we affirm the district court's denial of Ford's PCR application.

**AFFIRMED.**