# IN THE COURT OF APPEALS OF IOWA

―――――――――

No. 24-0473
Filed February 11, 2026

―――――――――

**Bryan Scott Casey,**
Applicant–Appellant,

v.

**State of Iowa,**
Defendant–Appellee.

―――――――――

Appeal from the Iowa District Court for Page County,
The Honorable Jeffrey L. Larson, Judge.

―――――――――

**AFFIRMED**

―――――――――

Brian Scott Munnelly, Omaha, Nebraska, attorney for appellant.

Brenna Bird, Attorney General, and Joshua Henry, Assistant Attorney
General, attorneys for appellee.

―――――――――

Considered without oral argument
by Ahlers, P.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

Bryan Casey appeals the denial of his application for postconviction relief (PCR) alleging his trial and PCR counsel were ineffective. He contends trial counsel coerced him to plead guilty and he did so only under duress. He also contends neither trial nor PCR counsel effectively investigated his claim of actual innocence. Because we find neither failed in any essential duty, we affirm the denial of relief.

## BACKGROUND FACTS AND PROCEEDINGS

In April 2022, Casey was charged with assault with intent to commit sexual abuse, a class "D" felony, and false imprisonment, a serious misdemeanor, against a female victim, A.B. According to the minutes of testimony, police responded to a call at a hotel in Clarinda where they met with A.B. She reported that Casey had requested money from her so she met him at the hotel. When she arrived at his room, she saw cans of alcohol and started pouring them down the sink to help Casey get sober. When she was done, Casey threw her on the bed, held her wrist, and "attempted to rape" her. She managed to get away and call police. The officers reported she looked like she had been crying and had a bruised wrist.

Casey pleaded not guilty and was appointed defense counsel, Larry Melcher. Melcher scheduled depositions for August. On the scheduled date, the prosecutor offered Casey a plea agreement and advised that he would withdraw the offer if Casey proceeded with deposing A.B. that day. In exchange for pleading guilty to assault with intent to commit sexual abuse, the State would dismiss the false imprisonment count and a pending probation violation and recommend a suspended sentence of five years with a suspended fine.

2

Because A.B. appeared for the deposition and on Melcher's advice, Casey took the deal, signing a written waiver of rights and plea of guilty. The written guilty plea stated that Melcher thoroughly advised Casey about his rights, the accusations, possible defenses, and the risks of trial; that Casey entered his plea voluntarily; that he waived his rights to appear for sentencing and his opportunity to file a motion in arrest of judgment; and that he was satisfied with Melcher's representation, among other waivers and agreements.

At sentencing, the court adopted the sentence recommended by the plea agreement. Casey filed and then dismissed his direct criminal appeal. In 2023, he petitioned for PCR. PCR counsel, Tiffany Kragnes, amended the petition to raise claims that trial counsel was ineffective, that the court illegally sentenced Casey to complete the sex offender treatment program, and that he is actually innocent.

After a trial where the court heard testimony from Casey and Melcher, the PCR court denied relief. Casey appeals.

## STANDARD OF REVIEW

We review the denial of PCR for errors at law. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). But our review of ineffective-assistance-of-counsel claims is de novo. *Id.*

## DISCUSSION

To prove ineffective assistance of counsel, Casey must show (1) that counsel failed to perform an essential duty and (2) that the failure resulted in prejudice. *Smith v. State*, 7 N.W.3d 723, 726 (Iowa 2024). "Both elements must be proven by a preponderance of the evidence." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). The claim can be decided on either prong. *Id.*

Casey contends his trial attorney coerced him into pleading guilty, rendering his plea involuntary. "Due process . . . requires that a defendant enter a guilty plea voluntarily and intelligently." *State v. Kress*, 636 N.W.2d 12, 21 (Iowa 2001). Trial counsel provides constitutionally deficient assistance by allowing a defendant to enter an involuntary or unintelligent plea including one based on inaccurate or incomplete information. *See id.* at 21–22. We presume counsel was effective but expect them to have acted "within the normal range of competence," *State v. Gant*, 597 N.W.2d 501, 504 (Iowa 1999), as measured by "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

Casey testified he told Melcher repeatedly that he was innocent of the charges. But Melcher told him that a jury would believe A.B., a social worker, over him. Melcher also advised that a jury could consider the fact that he had three prior domestic abuse assault convictions.

Similarly, Casey contends he took the plea deal under "duress" because he was "scared" of facing six-to-seven years in prison on a sexual assault conviction.

At the PCR trial, Melcher testified he communicated the plea offer to Casey before the deposition. But at the deposition the prosecutor advised that the offer would be withdrawn if Casey proceeded to depose A.B. Melcher testified he knew Casey asserted he was innocent but explained the risks of proceeding to trial versus taking the plea offer, and Casey chose to take the plea offer.

Casey's argument falls short because he has not identified, nor have we found, any act or omission of Melcher's to coerce Casey's agreement or that placed him under duress. *See Kress*, 636 N.W.2d at 21–22. Melcher, a

4

criminal defense attorney with decades of experience, provided advice based on his professional judgment on Casey's chances at trial compared to the very favorable terms of the plea offer and allowed Casey to make the ultimate decision. *See Sothman*, 967 N.W.2d at 523 (noting that claims of ineffective assistance based on inaccurate advice on the consequences of a plea agreement "do not involve trial tactics, strategies, or other judgment calls that we do not ordinarily second-guess" (citation omitted)). Casey provided no proof that Melcher's advice was inaccurate. And Melcher testified he would have taken the case to trial if Casey rejected the offer.

Other than his own testimony, Casey presented no evidence that his plea and waiver of rights were not voluntary. And while most of his testimony is naturally self-serving, Casey provided proof that his current claims are based on hindsight. While he claimed he didn't understand the plea agreement, he also testified he didn't read it. When asked, he candidly said, "I should have [read it.] Honestly." Casey also agreed that Melcher let him make the decision whether to proceed to trial or take the plea. And he agreed that "what [he] want[s] here is essentially a do-over because [he has had] second thoughts about the choices" he made.

For his final contention, Casey argues that neither Melcher nor his PCR counsel, Kragness, properly investigated the case in order to present his actual innocence claim. "Counsel is required to conduct a reasonable investigation or make reasonable decisions that make a particular investigation unnecessary." *Ledezma*, 626 N.W.2d at 145. "The extent of the investigation required in each case turns on the peculiar facts and circumstances of that case." *Schrier v. State*, 347 N.W.2d 657, 662 (Iowa 1984).

Casey asserts Melcher didn't do any investigation. But Melcher scheduled depositions and was prepared to depose A.B. when Casey decided to take the plea agreement. Thus the extent of the investigation was reasonably curtailed, and Melcher's investigation did not amount to ineffective assistance.

Casey also asserts Kragness failed to investigate the case thoroughly enough to present his actual innocence claim. The State challenges error preservation, but we choose to address the merits. *See Greenup v. State*, 966 N.W.2d 292, 296 (Iowa Ct. App. 2021).

To prove his actual innocence, Casey had to show "by clear and convincing evidence that . . . no reasonable fact finder could convict [him] . . . in light of all the evidence, including the newly discovered evidence." *Schmidt v. State*, 909 N.W.2d 778, 798 (Iowa 2018). Casey argues Kragness should have deposed Melcher to attack his investigation, brought up his failure to file a motion in arrest of judgment, and produced a Facebook message Casey received from A.B. after his plea. But none of that evidence, if presented, would have aided an actual innocence claim. In any event, Kragness questioned Melcher at the PCR trial and neither the PCR court nor this court found his investigation wanting. Nor would Melcher have moved in arrest of judgment when Casey waived that right. *See Ruiz v. State*, 18 N.W.3d 453 (Iowa 2025) ("Where a claimant alleges counsel's failure to pursue a particular course breached an essential duty, there is no such duty when the suggested course would have been meritless." (cleaned up)). And Casey couldn't produce the Facebook message because A.B. deleted it. The only evidence contradicting Casey's conviction was his own general denial, which is not enough to meet the "demanding standard" of actual innocence. *Dewberry v. State*, 941 N.W.2d 1, 5 (Iowa 2019); *id.* at 10 ("[A] postconviction-

6

relief applicant can establish a claim of actual innocence only upon clear and convincing evidence he or she was factually innocent of the offense of conviction, including any lesser included offenses thereof."). So, Casey has not shown that Kragness conducted a constitutionally deficient investigation of his PCR claims.

## CONCLUSION

Because we find that Casey has not shown that either his trial or PCR attorneys were ineffective in their representation, we affirm the denial of relief.

**AFFIRMED.**